IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN H. PARKER, *et al.*, | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION 21-0425-WS-B |
| | ) |
| EXTERIOR RESTORATIONS, INC., *et al.*, | ) |
| | ) |
|    Defendants. | ) |

**ORDER**

This matter comes before the Court on Plaintiffs' Motion to Remand (doc. 13). The Motion has been fully briefed, including an authorized Sur-Reply (doc. 23) filed by defendant Wall and Ceiling Solutions, LLC, and is now ripe.[1]

**I.      Background.**

Plaintiffs, John H. Parker and Bryan Maisel Homes, LLC, filed suit against Wall and Ceiling Solutions, LLC ("WCS") and several other defendants in the Circuit Court of Mobile County, Alabama, seeking an award of damages in connection with purported defects in stucco applied to Parker's residence. The action was still pending in state court when plaintiffs filed their Third Amended Complaint (doc. 1-7, PageID.854) on March 17, 2021. In that Third Amended Complaint, plaintiffs asserted as Count VI a claim against WCS and the other defendants for violation of the Magnuson-Moss Warranty Act. (*Id.*, PageID.862-63.)[2] As part of Count VI, plaintiffs alleged that they had experienced defects related to the stucco because it was not performing its intended function, that defendants failed or refused to remedy those defects

---

[1]      Plaintiffs have requested oral argument, but have not shown that a hearing would be helpful under the circumstances presented here. In its discretion, the Court **denies** the request for oral argument pursuant to Civil L.R. 7(h).

[2]      In other counts of the Third Amended Complaint, plaintiffs brought an array of state-law causes of action, including claims for breach of contract (Count I), breach of implied contract (Count II), negligence (Count III), wantonness (Count IV), breach of warranty (Count V), and violations of the Alabama Extended Manufacturer's Liability Doctrine (Count VII).

despite notice and the ability to do so, that such breaches "constitute a substantial impairment to the value of the So stucco product," and that plaintiffs demand judgment for damages including property damages, incidental and consequential damages, mental anguish and emotional distress. (*Id.*, PageID. 863.) Plaintiffs did not quantify their claimed damages in their pleading.

For several months after the filing of the Third Amended Complaint, WCS actively litigated and defended against plaintiffs' claims against it in state court. WCS filed a motion to dismiss on May 3, 2021, which the state court denied after oral argument on June 4, 2021. (Doc. 1-3, PageID.425-32; doc. 1-4, PageID.548.) Discovery proceeded in state court through the summer months of 2021, with WCS propounding discovery requests, receiving and serving discovery responses, participating in a site inspection, and being actively involved in scheduling depositions.

On September 29, 2021, WCS filed its Notice of Removal (doc. 1) in this District Court. Defendant's jurisdictional theory for removal was that plaintiffs' claim under the Magnuson-Moss Warranty Act supports federal question jurisdiction under 28 U.S.C. § 1331, and that WCS removed the action to federal court within 30 days after it was first ascertainable that plaintiffs' Magnuson-Moss Warranty Act claim satisfies the $50,000 threshold for removal jurisdiction over such a claim.[3] Plaintiffs have now moved to remand this action to state court on grounds that (i) the Notice of Removal was untimely and therefore procedurally defective, and (ii) WCS had previously waived its statutory privilege to removal. In their reply brief, plaintiffs also pursue a new argument that the minimum amount in controversy for subject matter jurisdiction to attach is not satisfied. Each ground for remand will be considered in turn.

**II.     Analysis.**

   ***A.     Timeliness of Removal.***

Plaintiffs first maintain that remand is required because the Notice of Removal filed by WCS is procedurally defective. With respect to the timing of removal, the applicable statute provides that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days

---

   [3]   By its terms, the Act provides that an injured consumer may file suit for violations of the Magnuson-Moss Warranty Act in federal court, provided that no such claim would be cognizable "if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." 28 U.S.C. § 2310(d)(3)(B).

after the receipt by the defendant … of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based ….." 28 U.S.C. § 1446(b)(1).  That said, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant … of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).  In their Motion to Remand, plaintiffs insist that because WCS was served with the Third Amended Complaint on March 20, 2021, "WCS was required to remove this matter by April 19, 2021 ….  Because WCS waited **193 days** to seek removal, WCS's removal is untimely." (Doc. 13, PageID.912.)

In support of this procedural defect argument, plaintiffs indicate that WCS was placed on notice at various times that "the amount in controversy in this lawsuit exceeded $50,000," such as upon receipt of a February 15 letter and accompanying flash drive containing invoices, upon review of the Complaint served on March 20, 2021, and upon review of plaintiff John H. Parker's responses to another defendant's interrogatories on June 10, 2021.  (Doc. 13, PageID.912-13.)  In their Reply, however, plaintiffs undermine their own assertion of untimeliness by arguing that, even now, WCS is unable to show "that the damages sought pursuant to Count VI of the Complaint claiming recovery under the Magnuson-Moss Warranty Act … meet[] the $50,000 threshold by a preponderance of the evidence." (Doc. 20, PageID.1127.)  Plaintiffs even go so far as to represent "that Plaintiffs cannot foresee that [their] claim for those damages outlined in the formula … either presently exceeds $50,000, or that it is even likely to exceed $50,000." (*Id.*, PageID.1129.)  Whatever else may be said about plaintiffs' reversal of position as to the amount-in-controversy element between the filing of their Motion to Remand and the filing of their Reply Brief, it effectively neutralizes their procedural objection to removal on timeliness grounds.  Given plaintiffs' current position that the amount in controversy for purposes of the Magnuson-Moss Warranty Act claim does not exceed the $50,000 jurisdictional threshold, their contradictory prior contention that WCS was on notice many months before removal that the amount in controversy was satisfied is unpersuasive and will not be credited as a viable basis for the Motion to Remand.[4]

---

[4] Even if the Court were to consider plaintiffs' untimeliness argument on the merits, without regard for plaintiffs' undermining and/or abandonment of that position in (Continued)

### B.     *Waiver of Right to Removal.*

In the alternative, plaintiffs maintain that their Motion to Remand should be granted because WCS waived its statutory privilege to removal.  As a matter of settled law, "A state court defendant may lose or waive the right to remove a case to a federal court by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court." *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246 (11th Cir. 2004) (citation omitted); *see also Frey v. Minter*, 829 Fed.Appx. 432, 437 (11th Cir. Oct. 1, 2020) ("Litigating on the merits, or taking some substantial offensive or defensive action in the state court action, waives a defendant's right to remove a state court action to federal court.") (citation and internal quotation marks omitted).  "Whether the state court defendant had waived his right to remove based on active participation must be made on a case-by-case basis." *Yusefzadeh*, 365 F.3d at 1246 (citation and internal quotation omitted).

Although plaintiffs' waiver argument has evolved over the course of the briefing process, their Reply clarifies that this ground for remand hinges on their contention that "the conduct of a deposition noticed and conducted under state court rules constitutes a waiver." (Doc. 20, PageID.1132.)  Plaintiffs unambiguously stake out their position as being that "Defendants waiv[ed] removal by their noticing and conducting a deposition noticed under the Alabama Rules of Civil Procedure." (*Id.*, PageID.1133.)  The pertinent facts are these: On September 28,

---

subsequent briefing, remand for such a procedural defect would not be appropriate here.  Although plaintiffs' Motion and principal brief convincingly demonstrate WCS's awareness months prior to removal that the amount in controversy for plaintiffs' claims as a whole exceeded $50,000 by a wide margin, that is not the appropriate jurisdictional inquiry.  After all, applicable case law instructs that "the amount in controversy for purposes of … § 2310(d)(3)(B) does not include damages flowing from any pendent state law claim brought by a plaintiff." *Ansari v. Bella Automotive Group, Inc.*, 145 F.3d 1270, 1272 (11th Cir. 1998); *see also Barganier v. Ford Motor Co.*, 2020 WL 2394934, *2 (S.D. Ala. May 12, 2020) (same).  While WCS was undoubtedly on notice as far back as February 2021 that plaintiffs were seeking damages on their claims (including both the Magnuson-Moss Warranty Act claim and the pendent state-law claims) that collectively totaled well in excess of $50,000, it was not until plaintiff Parker's interrogatory responses dated September 15, 2021 that WCS was first placed on notice that plaintiffs were – or might be – seeking more than $50,000 on their Magnuson-Moss Warranty Act claim (separate and apart from the pendent state-law claims), so as to render the case removable.  *See* § II.C., *infra*.  Accordingly, the Court rejects plaintiffs' argument that the Notice of Removal was untimely and that removal was procedurally improper on that basis.

2021, defendants Exterior Restorations, Inc. and Burl Barnett (but not WCS) served a notice of deposition of plaintiff John Parker, while the case was still pending in Mobile County Circuit Court.  (Doc. 13-9, PageID.1012.)  The following day, September 29, 2021, defendant WCS – with the consent of Exterior Restorations, Inc. and Burl Barnett – filed the Notice of Removal (doc. 1, PageID.1) removing this action to this District Court.  Neither plaintiffs nor anyone else objected to the deposition of Parker moving forward on October 22, 2021, as originally noticed while the case was still pending in state court.[5]  Plaintiffs' position, quite simply, is that because the Parker deposition previously noticed in state court went forward three-plus weeks post-removal, and because WCS participated and asked questions in that deposition, WCS should be found to have waived its removal rights, necessitating remand of this action to state court.

        Plaintiffs' argument is not persuasive.  Again, the legal test is that a defendant waives the right to remove an action to federal court "by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court."  *Yusefzadeh*, 365 F.3d at 1246.  What, exactly, did WCS do in connection with the Parker deposition that would constitute substantial offensive or defensive action in Mobile County Circuit Court before filing a notice of removal?  Plaintiffs' own exhibits confirm that WCS did not notice Parker's deposition.  To be sure, WCS participated in WCS's deposition, which was procedurally improper under the Federal Rules of Civil Procedure.  But that deposition occurred several weeks <u>after</u> WCS filed its Notice of Removal.  By the time that deposition happened, the Mobile County Circuit Court had no authority over the deposition and – regardless of what the parties did or did not stipulate to – the Alabama Rules of Civil Procedure could not govern that deposition because there was no longer a state-court action pending at that time.  This is not a case in which the removing defendant engaged in "post-removal conduct of litigation in state court."  (Doc. 20, PageID.1133.)

---

      [5]      This is so, despite the Federal Rules of Civil Procedure's proscription that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," Fed.R.Civ.P. 26(d)(1), Fed.R.Civ.P.  No such Rule 26(f) conference had taken place in these federal proceedings prior to the October 22 deposition date.  Plaintiffs explain that they did not object to the Parker deposition moving forward at that time because they believed the effect of that deposition would be a waiver of defendants' removal rights (doc. 20, PageID.1133), even though defendant WCS had already exercised those removal rights 23 days earlier by filing a Notice of Removal in federal court.

Plaintiffs could have objected to and halted Parker's deposition under Rule 26(d), Fed.R.Civ.P. They admittedly chose not to do so for strategic purposes, in an effort to bolster their Motion to Remand.  But the Court finds nothing about WCS's conduct in connection with the Parker deposition that could reasonably be viewed as constituting a waiver of its statutory right to remove this action to federal court on September 29, 2021.

      C.        **Amount in Controversy.**

Finally, the Court turns to the argument, first raised by plaintiffs in their reply brief, that "WCS Cannot Establish the Amount in Controversy Exceeds $50,000 as Required by the Magnuson-Moss Warranty Act." (Doc. 20, PageID.1127.)[6] As noted, a claim under the Magnuson-Moss Warranty Act ("MMWA") is not cognizable in federal court (and hence cannot support removal jurisdiction) "if the amount in controversy is less than the sum or value of $50,000 (exclusive of interest[] and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(B).  "Thus, the critical jurisdictional question – and the inquiry upon which the Motion to Remand hinges – is whether the amount in controversy for the [plaintiffs'] MMWA claim meets or exceeds the $50,000 minimum needed to support a federal forum." *Barganier v. Ford Motor Co.*, 2020 WL 2394934, *2 (S.D. Ala. May 12, 2020).

Plaintiffs readily acknowledge that their "pendent state court claims for damages … will exceed $50,000." (Doc. 20, PageID.1130.)  They correctly point out, however, that the relevant amount in controversy is that applicable to plaintiffs' MMWA cause of action, not that for their pendent state-law claims. *See, e.g., Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1296 n.5 (11th Cir. 1999) ("the only claims … the district court could consider in determining whether the jurisdictional amount of § 2310(d)(3) had been met were the purchasers' claims under the Magnuson-Moss Act"); *Holmes v. Kabco Builders, Inc.*, 2007 WL 841686, *3 (S.D. Ala. Mar.

---

      [6]      As a threshold matter, WCS urges the Court not to consider plaintiffs' amount-in-controversy objection in light of the general principle that it is improper for litigants to raise new arguments for the first time in a reply brief. (Doc. 23, PageID.1253.)  That general rule is inapplicable here because plaintiffs' newly raised argument implicates the subject matter jurisdiction of this Court, and is therefore non-waivable by the parties. *See, e.g., Greater Birmingham Ministries v. Secretary of State for State of Alabama*, 992 F.3d 1299, 1316 (11th Cir. 2021) ("Although the parties did not address this issue in their briefing or at oral argument, the Court is obligated, as a jurisdictional matter, to confirm the Plaintiffs' standing to bring this case. Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.") (citation and internal quotation marks omitted).

15, 2007) ("the relief sought in non-MMWA claims is of no consequence in the § 2310(d)(3) analysis"). Plaintiffs represent to this Court that "the damages attributable to the MMWA are not able to be determined at this time, but are less than $50,000." (Doc. 20, PageID.1132 n.2.)

There are two significant defects in plaintiffs' newly raised contention in their Reply that the amount in controversy for their MMWA claim is less than $50,000. First, it is irreconcilable with plaintiffs' position set forth in in their Motion to Remand, in which they castigated WCS for waiting too long to remove the case after it was placed on notice that the applicable amount in controversy far exceeded $50,000.[7] Under any reasonable reading, plaintiffs' principal brief unmistakably establishes that plaintiffs were convinced at the time of removal that the amount in controversy for their MMWA claim far exceeded $50,000, and that plaintiffs believed they had conveyed that position to WCS and the other defendants on numerous occasions prior to September 2021. These facts by themselves enable WCS to establish by a preponderance of the evidence that the amount in controversy for purposes of the MMWA claim was greater than $50,000 at the time of removal, so as to support federal removal jurisdiction in this action.

Second, plaintiffs' own discovery responses of September 15, 2021, establish by a preponderance of the evidence that, at the time of removal, plaintiffs sought more than $50,000 on their MMWA claim. In particular, WCS propounded the following interrogatory to plaintiff Parker: "Identify each and every item and/or kind of damage, including the amount thereof, that You contend You suffered as a result of WCS's alleged conduct made the basis of Count VI [the MMWA claim] of the Fourth Amended Complaint." (Doc. 1-9, PageID.881, at #5.) Parker responded with a couple of generic objections; a reference to seeking attorney's fees, interest and costs; and the statement "[s]ee above answer to item 4." Item 4 requested enumeration of Parker's damages as to Count V, a state-law breach of warranty claim. In that response, Parker wrote, in part: "Parker contends that it is likely the entire stucco system will need to be removed

---

[7] A sampling of plaintiffs' rhetoric on this point includes the following: (i) the WCS contention "that it was unable to ascertain that the amount in controversy exceeded $50,000 until September 15, 2021 … is factually incorrect" (doc. 13, PageID.912); (ii) "WCS was able to ascertain that the amount in controversy far exceeded $50,000 based on the allegations of the Complaint" (*id.*); (iii) "[w]hen WCS received the Complaint, its diligent counsel would have known the amount being claimed at [*sic*] exceeded the $50,000 threshold because Plaintiffs are seeking all damages available under the Magnuson-Moss Act" (*id.*, PageID.913); and (iv) "WCS knew long before September 14, 2021, that the amount sought by plaintiffs exceeds $50,000" (*id.*, PageID.914).

and replaced. Parker believes the home has suffered a very significant diminution in value and that in its current condition, the home has suffered a loss in value of approximately $500,000." (Doc. 1-9, PageID.880-81, at #4.)  A reasonable reading of Parker's responses to Interrogatories #4 and #5, considered together, would support a finding by a preponderance of the evidence that the amount in controversy for the MMWA claim at Count VI was approximately $500,000.  This discovery response thus served as the "other paper" providing the necessary jurisdictional predicate to make the action removable effective September 15, 2021, just two weeks before WCS in fact filed its Notice of Removal.[8]

---

[8]  In so concluding, the Court has considered and found unpersuasive three specific counterarguments from plaintiffs' Reply.  First, plaintiffs accuse WCS of "misdirection as to damages claimed under the interrogatories." (Doc. 20, PageID.1132.)  No such misdirection exists.  WCS asked a pointed, specific question about the damages Parker was seeking under his MMWA claim.  In response, Parker wrote "[s]ee above answer to item 4," where Parker forecasted damages of approximately $500,000 on another claim.  How else was WCS reasonably supposed to construe these two interrogatory responses together if not as an indication that plaintiffs seek $500,000 in damages under the MMWA?  Plaintiffs do not say.  Any misdirection was the result of Parker answering one interrogatory by reference to a very specific answer to another interrogatory, then coming back months later and saying that is not what he meant.

Second, plaintiffs indicate that they have submitted supplemental interrogatory responses "clarifying" that their damages under the MMWA are less than $50,000.  (Doc. 20, PageID.1132 n.2.)  It is black-letter law that "[a] court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) (citations omitted); *see also Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019) (same).  Far from merely clarifying the amount in controversy at the time of removal, plaintiffs are attempting to effectuate a remand by altering the amount in controversy post-removal.  That endeavor cannot succeed.  *See generally Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp.2d 1279, 1282 (S.D. Ala. 2009) ("what is prohibited are post-removal changes in the amount in controversy, not post-removal clarifications of the amount that was in controversy at the moment of removal"); *Land Clearing Co. v. Navistar, Inc.,* 2012 WL 206171, *3 (S.D. Ala. Jan. 24, 2012) ("if a plaintiff comes forward after removal and clarifies (as opposed to altering) facts bearing on the amount in controversy, courts in this Circuit routinely accept such evidence in determining whether § 1332 jurisdiction existed at the moment of removal"); *Hartinger v. 21st Century Centennial Ins. Co.*, 2014 WL 12629756, *3 n.2 (M.D. Fla. Jan. 3, 2014) (collecting cases).

Third, plaintiffs cite a "formula" for damages under the MMWA and say that under that formula, their recovery could not reach $50,000.  If that formula governs, and if it applies the way plaintiffs now contend it will, then plaintiffs may be correct that they will be hard-pressed to recover more than $50,000 under their MMWA claim.  But plaintiffs' likelihood of recovery is (Continued)

**III.     Conclusion.**

For all of the foregoing reasons, Plaintiffs' Motion to Remand (doc. 13) is **DENIED**. This action is referred to Magistrate Judge Bivins for issuance of a Preliminary Scheduling Order.

DONE and ORDERED this 16th day of December, 2021.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

not relevant to an amount-in-controversy analysis.  Rather, "the pertinent question is what is <u>in controversy</u> in the case, not how much the plaintiffs are ultimately likely to recover." *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019).  Plaintiffs' legal arguments, discovery responses and other statements demonstrate by a preponderance of the evidence that, at the time of removal, the amount in controversy on their MMWA claim was in excess of $50,000, irrespective of the likelihood (or not) that they may ultimately prevail in recovering that sum.