# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOHN H. PARKER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION 21-0425-WS-B** |
| | ) | |
| **EXTERIOR RESTORATIONS, INC.,** | ) | |
| **et al.,** | ) | **PUBLISH** |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter is before the Court on the plaintiffs' combined motion for leave to amend the complaint and motion to remand. (Doc. 27). One of the five defendants ("Wall") has filed a brief in opposition, (Doc. 30), in which two other defendants join. (Docs. 32, 33). The plaintiffs have filed a reply, (Doc. 34), and the motions are ripe for resolution. After careful consideration, the Court concludes the motion for leave to amend is due to be granted and the motion to remand is due to be denied.

## BACKGROUND

This action, which centers around stucco materials manufactured, distributed and/or inspected by certain defendants and applied by other defendants to the individual plaintiff's home, was filed in state court in January 2020. (Doc. 1-2 at 2). In March 2021, the plaintiffs filed their third amended complaint. (Doc. 1-7). This pleading for the first time added a federal claim, alleging in Count VI that all defendants violated the Magnuson-Moss Warranty Act ("Magnuson-Moss" or "the Act"). (*Id.* at 248-49). In September 2021, Wall removed the action, resting subject matter jurisdiction on federal question jurisdiction under 28 U.S.C. § 1331. (Doc. 1). The plaintiffs promptly moved to remand, on the grounds that

removal was both untimely and waived.  (Doc. 13).  In their reply brief, the plaintiffs added the argument that the amount in controversy under Count VI does not exceed the $50,000 jurisdictional threshold for such claims.  (Doc. 20).  In December 2021, the Court denied the motion to remand.  (Doc. 25).  The instant motions were filed four weeks later, in January 2022.  The single purpose of the proposed fifth amended complaint[1] is to remove the plaintiffs' claim under the Act so that the plaintiffs may "return to their chosen forum."  (Doc. 27 at 2).

### A.  Motion for Leave to Amend.

When, as here, a plaintiff cannot amend as of right, it "may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

When a plaintiff, after a proper removal, seeks by amendment to add a new defendant whose citizenship would destroy diversity, "[t]he district court … should scrutinize that amendment more closely than an ordinary amendment" and "consider the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities."  *Hensgens v. Deere & Co*., 833 F.2d 1179, 1182 (5th Cir. 1987).[2]  The defendants propose that the Court transport these considerations to the context of an amendment that eliminates the federal claim on which removal was based.  (Doc. 30 at 2-4).  The defendants, however, neither

---

[1] A fourth amended complaint was filed prior to removal.  (Doc. 1-8).

[2] The plaintiffs suggest that *Hensgens* is a dead letter after the passage of Section 1447(e) in 1988.  (Doc. 34 at 5).  On the contrary, as this Court has recently demonstrated, the Eleventh Circuit and others have continued to invoke and apply the *Hensgens* framework up to the present day.  *McCrory v. Costco Wholesale Corp*., ___ F. Supp. 3d ___, 2022 WL 377995 (S.D. Ala. 2022).

identify any case that has ever done so nor offer a persuasive rationale for such an extrapolation.[3]  The Court therefore applies the usual Rule 15(a)(2) analysis.

As noted, a court should freely grant leave to amend when justice so requires.  "A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile."  *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).  The defendants argue that leave to amend should be denied on the grounds of bad faith and undue delay.  (Doc. 30 at 2-3).

The defendants' treatment of undue delay is confined to a single sentence: "Plaintiffs … have been dilatory in seeking to amend their MMWA claim by having waited roughly ten months to delete the claim in [sic] since first pleading it."  (Doc. 30 at 3).  However, "[t]he mere passage of time, without anything more, is an insufficient reason to deny leave to amend."  *In re:  Engle Cases*, 767 F.3d 1082, 1118 (11th Cir. 2014) (internal quotes omitted).  In *Loggerhead Turtle v. County Council of Volusia County*, 148 F.3d 1231 (11th Cir. 1998), the plaintiffs moved to amend on October 27, based on an exhibit they had attached to a motion for preliminary injunction in late July.  *Id*. at 1235, 1256.  The Eleventh Circuit held that the trial court's decision to deny the plaintiffs leave to amend based on undue delay was an abuse of discretion.  *Id*. at 1236, 1257.  The Court concluded that, where the plaintiffs sought leave to amend within the time provided by the Rule 16(b) scheduling order, "[a]t most, their failure to request leave to file an amended complaint in late July instead of October supports a finding of 'delay,'

---

[3] The defendants say that the *Hensgens* rationale "extends with equal force" to the instant situation, (Doc. 30 at 3), but plainly it does not.  A post-removal amendment that adds a non-diverse defendant automatically requires remand, 28 U.S.C. § 1447(e), justifying special scrutiny before permitting such an amendment.  As addressed in Part B, *infra*, a post-removal amendment to delete a federal claim does not automatically require remand.  *Id*. § 1367(c)(3).

not 'undue delay' or 'dilatory' action." *Id*. at 1256-57.  The Eleventh Circuit cases upholding denials of leave to amend based on undue delay in moving to amend involve delays measured in years and/or extending beyond key deadlines.[4] Because the delay of which the defendants complain is measured in months, and because no deadline for amendments has even been established, much less expired, their undue delay argument must fail.

As to bad faith, the defendants argue that the plaintiffs, by seeking to remove their federal claim for the purpose of obtaining a remand, are engaged in "forum manipulation" within the contemplation of *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988).  (Doc. 30 at 2).  The defendants in their one-sentence argument have cited no authority for the proposition that such forum manipulation

---

[4] *See, e.g., Blackburn v. Shire US, Inc.*, 18 F.4th 1310, 1317-18 (11th Cir. 2021) (the plaintiff "sat idly by" until after the court ruled against him on the defendant's second motion to dismiss); *Tampa Bay Water v. HDR Engineering, Inc.*, 731 F.3d 1171, 1175, 186-87 (11th Cir. 2013) (two years after the complaint was filed, and after the close of discovery); *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (seven weeks after the close of discovery, and after dispositive motions had been filed); *Florida Evergreen Foliage v. E.I. DuPont de Nemours & Co*., 470 F.3d 1036, 1040-41 (11th Cir. 2006) ("years" after the complaint was filed, and after several dispositive motions and certified questions were resolved, and during interlocutory appeal); *Carruthers v. BSA Advertising, Inc*., 357 F.3d 1213, 1214, 1218 (11th Cir. 2004) (over a year and a half after the complaint was filed, and six months after the deadline for amendments); *Laurie v. Alabama Court of Criminal Appeals*, 256 F.3d 1266, 1275 (11th Cir. 2001) (well over a year after the complaint was filed, and long after the deadline for amendments); *Brewer-Giorgio v. Producers Video, Inc*., 216 F.3d 1281, 1284 (11th Cir. 2000) (over a year after the complaint was filed, and eight months after the deadline for amendments); *Jennings v. BIC Corp*., 181 F.3d 1250, 1258 (11th Cir. 1999) (almost three years after the complaint was filed, and five months after the deadline for amendments); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (over three years after the complaint was filed); *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (over five years after the complaint was filed, and after discovery had ended and dispositive motions had been filed).

is properly considered under Rule 15(a)(2), and the Court has discovered almost no decisions on either side of the issue.[5]

As discussed more fully in Part B, *infra*, the Supreme Court held in *Cohill* that federal courts should take a plaintiff's forum manipulation into account when deciding, under a balancing-of-factors analysis, whether to remand a case after the plaintiff amends his complaint to delete all federal claims. *Id*. at 357. The defendants' invitation to consider forum manipulation under Rule 15(a)(2) would appear to be in hopeless tension with *Cohill*. Under *Cohill*, the existence of forum manipulation is only one of several factors to be considered in making the post-amendment decision whether to remand. Under the defendants' proposed approach, the same forum manipulation would be sufficient, by itself, to justify denial of amendment in the first place, mooting any consideration of forum manipulation in the post-amendment context addressed in *Cohill*. As noted in Part B, forum manipulation is not a "trump card" that prevents remand regardless of the pull of other relevant factors. Under the defendants' approach, however, forum manipulation would prevent amendment (and thus remand) whenever it is established, effectively establishing it as a trump card. The defendants have offered the Court no reason to believe the Supreme Court intended that its holding be so easily eviscerated.

"The Supreme Court has emphasized that leave to amend must be granted absent a specific, significant reason for denial …." *Spanish Broadcasting System, Inc. v. Clear Channel Communications, Inc*., 376 F.3d 1065, 1077 (11th Cir. 2004). The Court concludes that neither undue delay nor bad faith counsels against

---

[5] *Compare Bouie v. Equistar Chemicals LP*, 188 Fed. Appx. 233, 238-39 (5th Cir. 2006) (district court properly denied the plaintiff leave to amend based on his bad faith in seeking to delete his federal claim in order to defeat federal jurisdiction) *with Briarwood Capital, LLC v. KBR Group, LLC*, 2010 1525453 at *2 (S.D. Cal. 2010) (that a plaintiff seeks leave to amend in order to obtain remand "is not grounds for finding bad faith"; "[r]ather, the alleged use of manipulative tactics may be taken into account, if at all, in determining whether remand is appropriate."). Neither *Bouie* nor *Briarwood Capital* provides a clear rationale for its conclusion.

granting the plaintiffs leave to amend their complaint so as to delete their Magnuson-Moss claim, and no other basis for denial of amendment has been suggested.  Accordingly, the motion is due to be granted.

### B.  Motion to Remand.

Because the parties are not completely diverse, the plaintiffs' fifth amended complaint removes the only basis for original subject matter jurisdiction; the Court's jurisdiction over the plaintiffs' state claims is supplemental within the contemplation of 28 U.S.C.§ 1367(a).  "The court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction."  *Id*. § 1367(c)(3).

Section 1367 became law in 1990.  Before then, such questions were addressed under the judicially developed doctrine of pendent jurisdiction, and Section 1367 "codifies these principles."  *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997).  In particular, the discretion imparted by Section 1367(c)(3) is to be exercised "'in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.'"  *Id*. (quoting *Cohill*, 484 U.S. at 357).  The parties agree that the relevant factors are those identified in *Cohill* and that those factors include "forum manipulation."  (Doc. 27 at 4-5; Doc. 30 at 5; Doc. 34 at 14).

### 1.  Forum Manipulation.

In *Cohill*, the removing defendants expressed concern that "a plaintiff whose suit has been removed to federal court will be able to regain a state forum simply by deleting all federal-law claims from the complaint and requesting that the district court remand the case."  484 U.S. at 357.  The Supreme Court agreed that "forum manipulation concerns are legitimate and serious," *id.* at 356 n.12, and it addressed these concerns by ruling that, "[i]f the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in

determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case." *Id*. at 357.

The plaintiffs are candid about why they have sought, successfully, to eliminate their federal claim: "They no longer wish to pursue the federal claim because it means giving up their preferred forum." (Doc. 34 at 22). They therefore desire "to remove Count VI … and return to their chosen forum." (Doc. 27 at 2). As the plaintiffs see it, this means they "are not forum shopping at all, they just want to return to their chosen forum." (*Id*. at 10). As discussed below, the plaintiffs are indeed engaged in forum manipulation.

The Court has discovered no Eleventh Circuit opinion discussing the reach of "forum manipulation" under *Cohill*. The Fifth Circuit, in contrast, has addressed the issue in at least eight published opinions. In *Brown v. Southwestern Bell Telephone Co*., 901 F.2d 1250 (11th Cir. 1990), "it [was] apparent that by dropping his admittedly preempted [by ERISA] claims and moving for a remand, [the plaintiff] attempted to engage in precisely the sort of forum manipulation proscribed in" *Cohill*. *Id*. at 755. In *Jones v. Houston Independent School District*, 979 F.2d 1004 (5th Cir. 1992), where the plaintiff responded to removal by asserting his federal claim was meritless and deleting it by amendment, the trial court's denial of remand "was not an abuse of discretion because Jones's sole apparent reason for seeking remand was to destroy removal jurisdiction." *Id*. at 106-07. In *Unida v. Levi Strauss & Co*., 986 F.2d 970 (5th Cir. 1993), the plaintiffs responded to a motion for summary judgment by moving to dismiss their federal claims and to remand, which "was an attempt to manipulate the forum in which their case was to be heard." *Id*. at 974-75. In *Burks v. Amerada Hess Corp*., 8 F.3d 301 (5th Cir. 1993), a plaintiff who "tried and failed to delete all of the federal claims from his complaint in order to get the district court to remand" thereby made "an attempt at forum manipulation." *Id*. at 306. In *Giles v. NYLCare Health Plans, Inc*., 172 F.3d 332 (5th Cir. 1999), the Court equated forum manipulation with "mov[ing] to eliminate valid causes of action simply to

defeat federal jurisdiction," which was not the case when the plaintiff, whose "obvious objective was to change the forum by getting back into state court," deleted only state claims completely preempted by ERISA. *Id*. at 340. In *Guzzino v. Felterman*, 191 F.3d 588 (5th Cir. 1999), plaintiffs whose cases were consolidated after removal did not engage in forum manipulation when they voluntarily dismissed their federal claims some two years following removal, "[a]nticipating the inevitable" after the trial court dismissed the identical federal claims of the bellwether plaintiffs. *Id*. at 593-94, 595-96. In *Enochs v. Lampasas County*, 641 F.3d 155 (5th Cir. 2011), the plaintiff's conduct in responding to a motion to dismiss by moving to delete all federal claims and then to remand the case was "not a particularly egregious form of forum manipulation, if it is manipulation at all." *Id*. at 157, 160. Most recently, the Court in *Watson v. City of Allen*, 821 F.3d 634 (5th Cir. 2016), quoted *Enochs* with approval. *Id*. at 643.

It is difficult to reconcile these disparate opinions, but they seem to fall into three categories: those that see as forum manipulation any attempt to engineer a return to state court by dropping the federal claims (*Unida*, *Burks*), even when the claims on which jurisdiction is based are untenable (*Brown*, *Jones*); those that exempt from characterization as forum manipulation dismissals of doomed claims, even when the obvious or stated purpose of the deletion is to return to state court (*Giles*, *Guzzino*); and those that consider even dismissals of colorable federal claims for no purpose other than to achieve remand as either not forum manipulation at all or as only mildly so (*Enochs*, *Watson*).

A review of opinions from sister courts within the Eleventh Circuit reveals a similar distribution. *Compare Lieu v. Sandy Sansing Cars, Inc*., 2007 WL 4287642 at *2 (N.D. Fla. 2007) ("delet[ing] a federal claim solely for the purpose of defeating an otherwise proper removal by the defendant" constitutes forum manipulation) *with Allstar Financial Group, Inc. v. Alpharetta Underwriters, LLC*, 2017 WL 10378311 at *4 (N.D. Ga. 2017) (where the plaintiff stated it amended its complaint to delete the federal claim because, "based on assertions from

defense counsel, the claim no longer has a factual basis," the Court "cannot say that forum manipulation was clearly Plaintiff's goal") *and Lake County v. NRG/Recovery Group, Inc*., 144 F. Supp. 2d 1316, 1318, 1321 (M.D. Fla. 2001) (where, shortly after its motion to remand was denied, the plaintiff amended its complaint to remove all reference to federal law and again moved to remand, "a remand to state court would merely effectuate [the plaintiff's] original choice of a state forum and, therefore, the traditional aversion of federal courts to forum shopping is not substantially implicated"). Other decisions reviewed by the Court from around the country likewise reflect conflicting views regarding forum manipulation but little explanation of why the particular court's view is correct.

The Court believes that any assessment of what constitutes forum manipulation must begin with *Cohill* itself. Nothing in that decision suggests that deleting a valid federal claim for no purpose other than to engineer a return to state court is not forum manipulation. On the contrary, *Cohill* appears to equate "deleting all federal-law claims from the complaint and requesting that the district court remand the case" with "forum manipulation." 484 U.S. at 357. Moreover, *Cohill* must be read in light of the dissent, which informed the majority opinion.

The *Cohill* dissent pointed out that the Court in *St. Paul Mercury Indemnity Co. v. Red Cab Co*., 303 U.S. 283 (1938), precluded plaintiffs from obtaining remand based on a plaintiff's post-removal voluntary reduction of his demand below the jurisdictional threshold. The dissent quoted *Red Cab*'s statement that, once a defendant has removed on the strength of the plaintiff's demand, "'the plaintiff ought not to be able to defeat that right and bring the cause back to the state court at his election,'" and it objected that the majority's failure to preclude remand based on a plaintiff's voluntary dismissal of federal claims, like the practice barred in *Red Cab*, "subject[s] 'the defendant's supposed statutory right of removal … to the plaintiff's caprice.'" 484 U.S. at 362 (White, J., dissenting) (quoting *Red Cab*, 303 U.S. at 294).

To the *Cohill* dissenters, dismissing a federal claim to engineer a remand is as improper as reducing the amount in controversy to accomplish the same result. The majority did not disagree with this assessment, or with the dissent's insistence that the retention of a removed case should not depend on the plaintiff's post-removal caprice. On the contrary, the majority expressly "agree[d] that forum manipulation concerns are legitimate and serious." 484 U.S. at 356 n.12. The majority disagreed only with the dissent's solution, opting to address forum manipulation on a case-by-case basis rather than by a "categorical prohibition on the remand of cases involving state-law claims." *Id*. at 357.

The Court therefore concludes that the dismissal of all federal claims for the sole purpose of obtaining a remand to state court constitutes forum manipulation within the contemplation of *Cohill*. To the extent that *Enochs* and like cases question that proposition, the Court disagrees with them. Because the plaintiffs explicitly admit that their only purpose in dismissing their Magnuson-Moss claim is to achieve a remand to state court, they have admitted their engagement in forum manipulation.[6]

The plaintiffs next seek to minimize the significance of their forum manipulation by accusing the defendants of manipulating the forum by removing the action in the first place. (Doc. 34 at 15). The plaintiffs' argument rests on a false equivalence. Even if a defendant's removal based on a plaintiff's assertion of a federal claim could be considered forum manipulation in some sense, it is forum manipulation approved by Congress; in stark contrast, a plaintiff's attempt to obtain remand by deleting his own federal claim is forum manipulation disapproved by the Supreme Court.

---

[6] Because the plaintiffs do not claim to have any additional reason for deleting their federal claim, the Court need not consider the impact of cases, such as *Giles* and *Guzzino*, which seem to allow a permissible motivation (such as deleting a claim considered untenable as a means of avoiding Rule 11 implications) to neutralize a simultaneous improper motivation of engineering a remand.

The plaintiffs next suggest that their reasons for desiring a return to state court are acceptable ones. They say they "are attempting to … get back to state court, litigate [their state claims] without the additional expensive obligations that exist within the federal structure, and get this matter set for trial as expeditiously as possible." (Doc. 27 at 11). This may explain why the plaintiffs prefer a state forum, but they identify no authority for the proposition that some reasons for seeking to engineer a remand by deleting all federal claims implicate forum manipulation concerns less than others. In any event, the Court cannot credit the plaintiffs' articulated reasons for favoring state court.

As to expense, the plaintiffs say that the additional potential recovery under their Magnuson-Moss claim, above and beyond that available under their state claims, "does not warrant the additional expense and time to which [they] will be exposed in this litigation." (Doc. 27 at 2-3). No explanation is provided for this assessment, and it appears implausible on its face. The plaintiffs' claim under the Act is the only one that provides for recovery of attorney's fees, which promise to be substantial, and the plaintiffs identify no basis for believing their marginal non-recoverable expenses in federal court (*i.e.*, their expenses in excess of those they would incur in state court) would overwhelm their recoverable attorney's fees. This is especially so given the defendants' unchallenged assertion that the plaintiffs' federal warranty claim parallels their state warranty claim and so requires no significant time or expense beyond that already required by the state claim. (Doc. 30 at 8).

As for an expeditious trial, the plaintiffs "expect to be able to obtain a trial date much more quickly in state court given the pendency [sic] of time that has elapsed in state court before this action was removed to this Court." (Doc. 27 at 3). Regardless of how much or little discovery remains to be accomplished, it is plain that the same amount of time will be required to complete it in either forum. The difference is that, in federal court, the Magistrate Judge will enter a scheduling order, promptly upon resolution of the pending motions and the filing

of a Rule 26(f) report,[7] that not only governs discovery but establishes the month in which trial will be held – usually, about four months after the close of discovery.  In contrast, the plaintiffs acknowledge that they cannot even request the setting of a trial date in state court until after discovery is complete, (Doc. 27 at 15, n.7), and they identify no basis for believing their case is likely to proceed to trial only four months after making such a request, especially given that dispositive motions would still have to be filed, briefed and decided.  Even assuming it is possible for the plaintiffs to receive a state trial setting within four months of the close of discovery, plainly they cannot advance to trial "much more quickly" in state court than in federal court.

Based on the apparent falsity of the plaintiffs' proffered reason for desiring a state forum, the Court can only conclude that their real reason for this preference is the common one of believing that federal judges are more likely to grant dispositive defense motions and that federal juries are more likely to find for defendants and to award smaller sums to successful plaintiffs.  Such a motivation may be understandable (even if misguided), but it accentuates the manipulative nature of the plaintiff's attempt to regain a state tribunal.  *Cf. New Mexico v. General Electric Co*., 467 F.3d 1223, 1242 n.29 (10th Cir. 2006) ("[W]e view the [plaintiff's] belated dismissal of its federal claims, only after the district court expressed skepticism over the validity of its damage calculation, as in all likelihood a manipulative tactic designed to achieve a remand to state court.").

As noted, forum manipulation improperly subjects the defendant's statutory right of removal to the plaintiff's caprice.  The plaintiffs' approach to their Magnuson-Moss claim amply demonstrates such caprice.  The plaintiffs litigated in state court for over a year before deciding, in their fourth iteration of the complaint and after more than ample time for reflection, to add a federal claim.

---

[7] The Magistrate Judge has ordered that the report be filed within seven days after entry of this order.  (Doc. 31).

They were thereafter content to retain the claim for six months, while the case remained in state court. Then, as soon as the defendants removed the action, the plaintiffs sought remand on the grounds that, because it was always obvious that the federal claim placed over $50,000 in controversy, removal was too late. (Doc. 13 at 5-7). A few weeks later, in their reply brief, the plaintiffs decided, contradictorily, that $50,000 had never been in controversy. (Doc. 20 at 1-6). Neither argument ever had a prayer.[8] Having lost on both, the plaintiffs now seek to obtain remand by deleting their federal claim for the declared purpose of getting out of federal court. In the process, they have offered an apparently false reason for their desire to do so. Should the Court deny one or both of their pending motions, they have announced their intention to file a "motion to reconsider" the Court's jurisdictional ruling, in order to make a new (and patently meritless) argument they admit they "should have urged" on the Court while their motion to remand was pending. (Doc. 27 at 3 n.1).[9] Enough is enough.

Remaining for consideration is the weight to be assigned the plaintiffs' forum manipulation. The Court respectfully disagrees with the position of the *Enochs* Court that forum manipulation like that practiced by the plaintiffs here is

---

[8] The plaintiffs' untimeliness argument was doomed by their subsequent insistence that the Magnuson-Moss claim did not place over $50,000 in controversy. (Doc. 25 at 3). Their jurisdictional argument was doomed by their admission in their September 2021 interrogatory responses that they sought at least $500,000 under that claim. (*Id*. at 7-8).

[9] The plaintiffs intend to argue that the Court improperly utilized a preponderance-of-the-evidence standard in evaluating the amount in controversy – even though that is exactly the standard the plaintiffs on their motion to remand insisted that the Court use. (Doc. 20 at 1). The plaintiffs now propose that the Court should have employed the more stringent "legal certainty" standard. (Doc. 27 at 3 n.1). As the very case cited by the plaintiffs states explicitly, this standard applies only when the complaint expressly demands an award below the federal jurisdictional threshold. Neither the third nor the fourth amended complaint demands a particular sum of damages under the Magnuson-Moss claim, but only damages "in an amount to be determined by the Court." (Doc. 1-7 at 10; Doc. 1-8 at 10). The legal certainty test clearly was never implicated.

"not … particularly egregious" and with the *Lake County* Court's similar pronouncement that such conduct does "not substantially implicat[e]" the "traditional aversion of federal courts to forum shopping."  In light of the *Cohill* dissent's expression of the gravity of forum manipulation and the majority's agreement that it is a "legitimate and serious" concern, the Court concludes that forum manipulation, when it exists, is to be assigned substantial weight in the Section 1367(c)/*Cohill* calculus.[10]

The plaintiffs' forum manipulation is not necessarily fatal to their motion to remand.  *Cohill* instructs that forum manipulation is to be "take[n] … into account in determining whether the balance of the factors to be considered under the pendent jurisdiction doctrine support a remand in the case."  484 U.S. at 357. Were forum manipulation dispositive, it would be unnecessary to consider those other factors.  The Court therefore agrees with the Fifth Circuit that forum manipulation is not "a trump card which overrides all of the other factors we are instructed to consider and balance."  *Enochs*, 641 F.3d at 161.  On the other hand, because the plaintiffs' forum manipulation weighs substantially against them, they can secure remand only by demonstrating that the remaining factors cumulatively weigh in their favor, and that they do so by a sufficiently wide margin to overcome the impact of their forum manipulation.[11]

_____

[10] The Court has reviewed the handful of opinions offered by the plaintiffs – all of them unpublished sister court decisions – and finds no reasoning in them that supports their downplaying of the significance of forum manipulation or that undermines the Court's contrary conclusion.

[11] The plaintiffs, quoting *Cohill*, suggest that remand is all but compulsory "'when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain.'"  (Doc. 27 at 5 (quoting *Cohill*, 484 U.S. at 350)).  The plaintiffs omit from their quotation the accompanying footnote, which states that this is not "a mandatory rule to be applied inflexibly in all cases" but only a recognition that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine … will point toward declining jurisdiction over the remaining state-law claims."  484 U.S. at 350 n.7.  The timing of the plaintiffs' dismissal of their federal claim thus does not obviate

### 2. Judicial Economy.

By economy is meant judicial economy.  *Cohill*, 484 U.S. at 350.  The plaintiffs stress that this action was pending in state court for 20 months before it was removed, while it had been pending in federal court for less than four months when the instant motions were filed.  They also note that discovery occurred in state court but has not occurred in federal court.  (Doc. 27 at 6-8; Doc. 34 at 15). The plaintiffs assume rather than demonstrate that these facts reflect that judicial economy would be furthered by remand.  The Court disagrees.

Impacts on judicial economy are measured in order to "support the conservation of judicial energy and avoid multiplicity in litigation" or "substantial duplication of effort."  *Parker v. Scrap Metal Processors, Inc*., 468 F.3d 733, 746 (11th Cir. 2006).  "Evaluating considerations of judicial efficiency and duplication of judicial effort is not just a matter of toting up months or motions or the page counts of judicial orders."  *Ameritox, Ltd. v. Millenium Laboratories, Inc*., 803 F.3d 518, 539 (11th Cir. 2015) (internal quotes omitted).

Based on these authorities and the principles underlying them, the length of time a case rested in state court before removal is irrelevant, as is the amount of discovery conducted there.  This is so because neither metric reflects an investment of judicial resources – much less an accumulation of case-specific judicial expertise – that would be wasted absent remand, requiring unnecessary duplication in federal court.[12]

---

consideration of the *Cohill* factors.  Nor, given the plaintiffs' forum manipulation, is this the "usual case."

[12] Nor have the plaintiffs suggested that the discovery conducted in state court would have to be repeated in federal court so as to require a duplication of effort by the parties.

The plaintiffs identify only two instances in which the state judge invested any time in this case, both on motions to dismiss.  (Doc. 27 at 6-7).  The first motion involved only procedural issues (party alignment and standing) concerning the entity plaintiff, and it was resolved, on the basis of ten total pages of briefing (and oral argument), by entry of a one-page order prepared by the plaintiffs.  (Doc. 1-3 at 276-81; Doc. 1-3 at 23-26, 34-35).  The plaintiffs offer no explanation how this minimal excursion into a non-substantive arena could possibly invest the state judge with meaningful case-specific expertise.

The second motion to dismiss addressed only three (out of nine) counts, with respect to only one (out of five) defendants, raising only one limited issue (the movant's status *vel non* as a seller or manufacturer of the stucco).  The motion was resolved, on the basis of twenty total pages of briefing, by a one-sentence denial without opinion.  (Doc. 1-3 at 37-43, 93-97, 151-58; Doc. 1-4 at 1).  This experience presumably educated the state judge regarding that aspect of the action but, because the motion was so narrow in scope, so lightly briefed, and so succinctly decided, it would not require "substantial duplication of effort" for the Court to address a future motion for summary judgment covering the same ground.  Moreover, because the plaintiffs have brought what they describe as a "comple[x]" case, (Doc. 27 at 1), of which the motion to dismiss implicated only a small sliver, any case-specific expertise acquired by the state judge is equally limited.

Because remand would not conserve judicial energy or avoid substantial duplication of effort, considerations of judicial economy are at best neutral and do not weigh in favor of  remand.

### 3.  Convenience.

The plaintiffs concede that this factor is "neutral."  (Doc. 34 at 15).

### 4. **Fairness.**

The plaintiffs' only argument regarding fairness is that they "are due some consideration in their choice of forum." (Doc. 34 at 16). No explanation or authority accompanies this brief statement.

As the plaintiffs insist, they are "the masters of their complaint." (Doc. 34 at 2). This means they "selec[t] the claims that will be alleged in the complaint." *Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008). In particular, they were "free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." *Hill v. BellSouth Telecommunications, Inc.*, 364 F.3d 1308, 1314 (11th Cir. 2004) (internal quotes omitted).

However, even though the plaintiff is always the master of his complaint, he "is not always master of the forum." *Borrero v. United Healthcare, Inc.*, 610 F.3d 1296, 1303 (11th Cir. 2010). As masters of the complaint, the plaintiffs voluntarily injected a federal claim, which effectively rendered the defendants the masters of the forum. As masters of the complaint, the plaintiffs have now voluntarily deleted that federal claim, but governing law does not make them masters of whether that deletion will result in a return to a state forum; instead, that decision is committed to the Court's discretion, guided by the *Cohill* factors.

The plaintiffs are unable to articulate what is unfair about holding them to the natural consequences of their own litigation choices. Their situation appears to echo that of the plaintiff in *Ameritox*, which argued in vain to retain and not dismiss[13] its novel and dubious state claims after its federal claim was resolved by consent decree:

> Considerations of fairness, however, do not support continued exercise of jurisdiction. [The plaintiff] *has only itself to blame* for the problems inherent in its [state law] theory. *No one forced* [the plaintiff] to introduce novel and complex legal theories. And .. every litigant who

---

[13] Because the plaintiff sued initially in federal court, 803 F.3d at 522, remand was not an option.

> brings supplemental claims in court *knowingly risks* the dismissal of
> those claims.

803 F.3d at 539 (emphasis added).  No one forced the plaintiffs to introduce a federal claim, and every state plaintiff who does so knowingly risks removal to federal court without a guaranteed path to remand.  In short, the plaintiffs have only themselves to blame for their predicament.  Considerations of fairness thus do not affirmatively favor remand.

### 5.  Comity.

"'State courts, not federal courts, should be the *final arbiters* of state law' in our federalist system."  *Ameritox*, 803 F.3d at 540 (quoting *Baggett v. First National Bank*, 117 F.3d 1342, 1353 (11ᵗʰ Cir. 1997) (emphasis added)).  The plaintiffs' comity argument relies on this proposition.  (Doc. 34 at 18).[14]  Similarly, "'[s]tate courts, not federal courts, are the *final expositors* of state law ....'"  *Id*. (quoting *Hardy v. Birmingham Board of Education*, 954 F.2d 1546, 1533 (11ᵗʰ Cir. 1992) (emphasis added).

Both of the quoted statements reflect that state courts should, and ultimately do, decide what state law *is*; neither suggests that only state courts should ever decide unremarkable cases simply because they require the application of settled state law.  Thus, for example, comity favored remand in *Hardy* because the state claims depended on "the proper interpretation to be given to an Alabama statute which is far from clear on its face, or under Alabama case law."  954 F.2d at 1553.  Similarly, comity favored dismissal of the supplemental state claims in *Ameritox* because otherwise the federal court would be "creating law."  803 F.3d at 540; *see*

---

[14] In the introduction to their reply brief, the plaintiffs assert that, because they are the masters of their complaint, "important considerations of comity and federalism should guide the Court's decision."  (Doc. 34 at 2).  This teaser is not followed up with any explanation, leaving the Court nothing to consider.

*also U.S. Anchor Manufacturing, Inc. v. Rule Industries, Inc.*, 7 F.3d 986, 1005 (11th Cir. 1993) (comity favored a state determination of novel state law issues).

In evaluating the discretionary retention of state claims, the question is "whether comity considerations warrant determination by a state court (*i.e.*, is the state claim novel or particularly complex such that an accurate definitive interpretation of state law is necessary." *L.A. Draper & Son v. Wheelabrator-Frye, Inc*., 735 F.2d 414, 431 (11th Cir. 1984). That is, novel and complex state-law questions implicate comity and thus favor remand or dismissal. In contrast, when only "relatively simple questions of state law" are present, comity weighs in favor of retaining jurisdiction of the state claims. *West v. City of Albany*, 830 Fed. Appx. 588, 597 (11th Cir. 2020).

The plaintiffs have identified no novel or complex question of state law that must be decided in this lawsuit. The Court need not, and does not, rule that comity exerts no residual tug towards remand even in such a legally workaday lawsuit as this. Thanks to the plaintiffs' forum manipulation and their inability to show that any other factor weighs in favor of remand, in order to prevail they were required to show that comity strongly favors remand. Without some novel or complex question of state law to be resolved, they cannot make such a showing.

### 6. Summary.

The plaintiffs' admitted forum manipulation weighs substantially against remand. Judicial economy, convenience, and fairness all are at best neutral. Comity may slightly favor remand, but it does not do so with sufficient force to counterbalance the plaintiffs' forum manipulation. Accordingly, the Court in its discretion under Section 1367(c) elects to exercise supplemental jurisdiction over the state claims. The plaintiffs' motion to remand is thus due to be denied.

## CONCLUSION

For the reasons set forth above, the plaintiffs' motion for leave to amend the complaint is **granted**.  The plaintiffs are **ordered** to file and serve their fifth amended complaint, deleting their Magnuson-Moss claim, on or before **May 4, 2022**.  The plaintiffs' motion to remand is **denied**.  The defendants' request for an award of attorney's fees and costs, (Doc. 30 at 10-12), construed as a motion for such relief, is **denied as moot**.

DONE and ORDERED this 27th day of April, 2022.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE