IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN H. PARKER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 21-0425-WS-B |
| | ) |
| EXTERIOR RESTORATIONS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the plaintiffs' motion to certify questions for interlocutory appeal. (Doc. 39). One defendant ("Wall") has filed a brief in opposition, (Doc. 47), in which three other defendants join. (Doc. 48, 50). The plaintiffs have filed a reply, (Doc. 53), and the motion is ripe for resolution.¹ After careful consideration, the Court concludes that the motion is due to be denied.

## BACKGROUND

This action, which centers around stucco materials manufactured, distributed and/or inspected by certain defendants and applied by other defendants to the home of the individual plaintiff ("Parker"), was filed in state court in January 2020. (Doc. 1-2 at 2). In March 2021, the plaintiffs filed their third amended complaint. (Doc. 1-7). This pleading for the first time added a federal claim, alleging in Count VI that all defendants violated the Magnuson-Moss Warranty Act ("Magnuson-Moss" or "the Act"). (*Id*. at 248-49). In September

---

¹ The plaintiffs' request for oral argument, (Doc. 39 at 9-10), construed as a motion for such relief, is **denied**. Civil Local Rule 7(h).

2021, Wall removed the action, resting subject matter jurisdiction on federal question jurisdiction under 28 U.S.C. § 1331. (Doc. 1). The plaintiffs promptly moved to remand, on the grounds that removal was both untimely and waived. (Doc. 13). In their reply brief, the plaintiffs added the argument that the amount in controversy under Count VI does not exceed the $50,000 jurisdictional threshold for such claims. (Doc. 20). In December 2021, the Court denied the motion to remand. (Doc. 25).

In January 2022, the plaintiffs filed a motion for leave to amend their complaint so as to delete the Magnuson-Moss claim, along with a motion to remand based on that deletion. (Doc. 27). In April 2022, the Court granted the motion for leave to amend and denied the motion to remand. (Doc. 35).

In the instant motion, the plaintiffs ask the Court to certify three questions to the Eleventh Circuit pursuant to 28 U.S.C. § 1292(b). The first question addresses the Court's jurisdictional ruling on the plaintiffs' initial motion to remand, while the second and third questions address the Court's ruling on their second motion to remand. The proposed questions are as follows:

> 1. "Does a claim for diminution of value of a home satisfy the jurisdictional requirements of the Magnuson-Moss Warranty Act ("Act"), 15 U.S.C. § 2310(d)(3)(B)"?
>
> 2. "Is it improper forum manipulation for a plaintiff to dismiss before entry of a scheduling order the one claim upon which federal jurisdiction was alleged to return to its chosen state forum"?
>
> 3. "Does a trial court abuse its discretion by retaining supplemental jurisdiction over state-law claims when the claims establishing federal jurisdiction are dismissed before entry of a scheduling order?"

(Doc. 39 at 1-2).

## DISCUSSION

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). The burden is on the party seeking interlocutory appeal to establish each of these elements. *McFarlin v. Conseco Services, LLC*, 381 F.3d 1251, 1263-64 (11th Cir. 2004). "[Section] 1292(b) certification is wholly discretionary with both the district court and this Court." *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1358 (11th Cir. 2008). "Furthermore, §1292(b) sets a high threshold for certification to prevent piecemeal appeals," and "[m]ost interlocutory orders do not meet this test." *Id*. at 1359.

### A. Diminution in Value.

"[I]n order to bring suit in federal court [for a claim under the Act], the amount in controversy must be at least $50,000, exclusive of interest and costs." *Cunningham v. Fleetwood Homes, Inc.*, 253 F.3d 611, 618 (11th Cir. 2001) (citing 15 U.S.C. § 2310(d)(1)(B), (d)(3)(B)).

Count VI of the third amended complaint sought recovery of "property damages, incidental and consequential damages, mental anguish and emotional distress," but it did not demand any particular amount. (Doc. 1-7 at 9-10). Several months later, however, after the plaintiffs filed a fourth amended complaint that made no changes to Count VI, Parker responded to Wall's interrogatories as follows:

> 4. Identify each and every item and/or kind of damage, including the amount thereof, that You contend You suffered as a result of WCS's alleged conduct made the basis of Count V of the Fourth Amended Complaint [asserting a state claim for breach of warranty against all defendants].

3

>        RESPONSE: Parker objects to this interrogatory on the grounds that discovery is ongoing and it seeks the mental impressions of Parker's legal counsel. Notwithstanding this objection, leaks continue to manifest themselves after significant rain events at various locations. At this point, Parker contends that *it is likely the entire stucco system will need to be removed and replaced. Parker believes the home has suffered a very significant diminution in value and that in its current condition, the home has suffered a loss in value of approximately $500,000. This in part is due to the cost of resolving the problems*, as well as difficulty in finding a realtor that would be willing to spend his or her time in listing a home with *known problems of water intrusion and mold growth*. Parker will supplement as he continues to analyze market conditions and *cost to remove and replace the entire stucco system*.
>
>        5. Identify each and every item and/or kind of damage, including the amount thereof, that You contend You suffered as a result of WSC's alleged conduct made the basis of Count VI of the Fourth Amended Complaint.
>
>        RESPONSE: Parker objects to this interrogatory on the grounds that discovery is ongoing and it seeks the mental impressions of Parker's legal counsel. Notwithstanding this objection, plaintiff also seeks recovery of attorney's fees under the Magnuson Moss Warranty Act, as well as interest, court costs in an amount yet to be determined. *See above answer to item 4*.

(Doc. 1-9 at 2-3 (emphasis added)). Parker served these discovery responses on September 15, 2021. (*Id*. at 6). Removal was accomplished 14 days later. (Doc. 1 at 1). Subject matter jurisdiction was based on federal question jurisdiction under Section 1331, specifically, the Magnuson-Moss claim. (*Id*. at 2-3). Satisfaction of the $50,000 jurisdictional threshold for such claims was pegged to the interrogatory responses quoted above. (*Id*. at 3-4).

The plaintiffs timely moved to remand. (Doc. 13). The plaintiffs did not deny that the amount in controversy under their Magnuson-Moss claim exceeded the jurisdictional threshold of $50,000, exclusive of interest and costs. On the contrary, they insisted that removal was untimely precisely because they had at all times sought recovery of over $50,000 on this claim. The plaintiffs stated they

4

were "claiming there is a systemic failure with regard to the stucco such that the stucco would need to be removed, repurchased, replaced, and additionally, that the faulty stucco was causing a ripple effect of damages to other areas of the home." (*Id*. at 5). The plaintiffs insisted that "the damage being claimed far exceeds the cost of the original stucco work," which cost they identified as $74,100. (*Id*.). To show the defendants were on notice of the amount in controversy, the plaintiffs pointed to a flash drive they had produced in February 2021, reflecting costs exceeding $133,000 in labor and materials to repair and replace portions of the stucco and other housing components allegedly damaged by the allegedly faulty stucco. (*Id*. at 2, 3, 5, 6).[2]

The Court rejected the plaintiffs' untimeliness argument for two independently sufficient reasons. First, it found that the plaintiffs' argument in their reply brief – that the amount in controversy under Count VI *does not* exceed $50,000, exclusive of interest and costs – "effectively neutralize[d]" their argument that the defendants were on notice that the amount in controversy under that claim *does* exceed that threshold. (Doc. 25 at 3). Second, the Court concluded that the material on which the plaintiffs relied was too vague to place the defendants on notice that the amount in controversy specifically under the Magnuson-Moss claim – as opposed to the amount in controversy under the eight state claims raised by the plaintiffs – exceeded $50,000. (*Id*. at 3-4 n.4).

In their reply brief, the plaintiffs changed tacks, eliminating all reference to untimeliness and instead asserting that "the damages attributable to the MMWA are not able to be determined at this time, but are less than $50,000." (Doc. 20 at 6 n.2). The Court rejected this assertion as hopelessly inconsistent with both Parker's pre-removal interrogatory responses seeking at least $500,000 under the

---

[2] The plaintiffs sent a cover letter to the defendants advising that "Parker was having issues with the stucco product installed at his residence [and] demand[ing] that they remedy the problems," with the flash drive "containing, among other items, invoices for said repairs and materials purchased for same." (Doc. 13 at 1-2).

5

Magnuson-Moss claim and the plaintiffs' post-removal insistence in their motion to remand that they had always sought over $50,000 under that claim.   (Doc. 25 at 7-8).

The plaintiffs now seek certification of the question whether "a claim for diminution of value of a home satisf[ies] the jurisdictional requirements of" the Act.  (Doc. 39 at 1).  They argue that this question presents a "controlling question of law" under Section 1292(b) because it "goes to the Court's exercise of jurisdiction." (*Id*. at 5).  The Court cannot agree.  No matter how the Eleventh Circuit might answer the proposed question, the amount in controversy under the federal claim at the moment of removal exceeded $50,000.  The Court therefore has subject matter jurisdiction regardless of the answer to the proposed question.

"A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Pretka v. Kolter City Plaza II, Inc*., 608 F.3d 744, 751 (11th Cir. 2010).  "If jurisdiction was proper at that date [the date of removal], subsequent events, even the loss of the required amount in controversy, will not operate to divest the court of jurisdiction." *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002).

As demonstrated above, it is unquestionable that, at the moment of removal, Parker sought at least $500,000 in recovery under the Magnuson-Moss claim.  That figure, which Parker associated with diminution in the value of his home, was thus presumptively in controversy at that time.  Despite that presumption, this Court has recognized that, "[w]hen state law precludes the recovery of a form of damages demanded by the plaintiff, that form of damages may not be considered in determining whether the jurisdictional threshold is met." *SUA Insurance Co. v. Classic Home Builders, LLC*, 751 F. Supp. 2d 1245, 1253 (S.D. Ala. 2010).

The standard for ignoring a claimed element of damages is quite high: "When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, [citations omitted], unless it is apparent to a

6

*legal certainty* that such cannot be recovered." *Holley Equipment Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) (emphasis added). This standard requires either that a state statute or judicial precedent expressly precludes recovery of the element of damages in question or that preclusion is plain from such sources though not explicitly spelled out. Thus, in *Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294 (11th Cir. 1999), the Court held that the district court could not consider the complaint's demand for punitive damages under the Act in determining the amount in controversy, because "the law of Alabama is clear" that punitive damages are not recoverable for breach of warranty. *Id*. at 1299.[3] This clarity was established by the following: (1) remedies for breach of warranty are established by Alabama's version of the Uniform Commercial Code; (2) the Code rules out "penal damages" unless "specifically provided in this title or by other rule of law," Ala. Code § 7-1-106; (3) nothing in the Code provides for punitive damages for breach of warranty; (4) Alabama's common law precludes punitive damages for breach of contract, of which a warranty is a species; and (5) the Alabama Supreme Court previously had expressly rejected recovery of punitive damages in a suit for breach of warranty. *Id*.

The plaintiffs' argument for why diminution of home value should not be an element of damages for breach of warranty under Alabama's version of the UCC does not remotely approach *Boyd*'s level of clarity. Rather than addressing

---

[3] In *MacKenzie v. Chrysler Corp.*, 607 F.2d 1162 (5th Cir. 1979), the predecessor to the Eleventh Circuit noted that "the legislative history clearly implies that a resort to state law is proper in determining the applicable measure of damages under the Act," and it looked to Mississippi law to determine the availability of consequential and punitive damages under the Act. *Id*. at 1166-67. *MacKenzie* establishes that "we should look to state law, rather than federal law, to determine whether punitive damages are available under the Magnuson-Moss Act." *Boyd*, 188 F.3d at 1298. Only the availability of punitive damages as an element of recovery was at issue in *Boyd*, *id*. at 1296-97, so its phraseology does not indicate that the availability of consequential or other non-punitive damages under the Act is not governed by state law. The plaintiffs concede that "[t]he categories of damages recoverable under the Act is a matter of state law." (Doc. 39 at 5).

remedies for breach of warranties on goods under Title 7, the plaintiffs rely exclusively on a measure of damages applicable in the separate context of construction contracts between homeowners and homebuilders. (Doc. 39 at 6). In that context, as a result of judicial decisions resting on secondary authorities, the measure of damages is generally the cost of remedying the building's defects, with diminution in the value of the home due to the builder's deficient performance providing an alternate measure of damages only if the cost of remediation would amount to economic waste. *Kohn v. Johnson*, 565 So. 2d 165, 168 (Ala. 1990); *Lowe v. Morrison*, 412 So. 2d 1212, 1213-14 (Ala. 1982). Rather than demonstrating, through precedent and reason, that the same rule must apply to breaches of warranties on goods, the plaintiffs simply posit that this should be the law. (Doc. 39 at 6).[4]

Unlike with construction contracts, remedies for breaches of warranties on goods are addressed by statute. "In a proper case any incidental and consequential damages under Section 7-2-715 may also be recovered." Ala. Code § 7-2-714(3). Section 7-2-715 permits an award of consequential damages for "[a]ny loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise," as well as "[i]njury to … property proximately resulting from any breach of warranty." *Id*. § 7-2-715(2). The plaintiffs have made no effort to show that diminution in the value of a home due to defective stucco cannot, under Alabama law, constitute either injury to property or a loss resulting from requirements and needs (such as cladding that does not leak and thereby damage or destroy elements of the structure) that the seller of the stucco had reason to know of. Whatever the ultimate resolution of that open question, the answer is not so clear that it precludes the Court from considering the plaintiffs'

---

[4] The plaintiffs concede that "nothing specifically states Alabama would not consider those damages [for diminution in value] as part of a claim under the Act." (Doc. 39 at 7).

demand for diminution in value in assessing the amount in controversy at the moment of removal.

When preclusion of an element of damages is as clear as was the case in *Boyd*, damages from that element, though claimed by the plaintiff, are never placed in controversy because, at the moment of removal, there is no colorable argument that such damages are recoverable, so that "it is apparent to a legal certainty that such cannot be recovered." *Holley Equipment Co.*, 821 F.2d at 1535. When, as here, the preclusion of an element of damages is unresolved at the moment of removal and is not plainly dictated by principles and precedents existing at that point in time, damages claimed under that element are in controversy upon removal, because the recoverability of such damages has yet to be determined. The plaintiffs themselves insist that their proposed question is a "difficult question of first impression," (Doc. 53 at 7), an admission patently fatal to their satisfaction of *Holley*'s "legal certainty" standard for ignoring the plaintiffs' demand for damages for diminution in value.

In short, a decision by the Eleventh Circuit may resolve whether damages for diminution of the value of a home are recoverable under Sections 7-2-714 and -715 and thus under the Act,[5] but its decision will not change the fact that, at the time of removal, the recoverability of such damages was an open question, the answer to which was not apparent to a legal certainty. Appellate resolution of the plaintiffs' proposed question therefore cannot deprive the Court of subject matter jurisdiction, and the question thus does not present a controlling question of law.

Even were the Eleventh Circuit to rule that diminution in home value is not a proper element of damages in this case and (despite no such question being

---

[5] Because the recoverability of such damages is a question of state law, not federal law, and because "state courts are the final arbiters of state law," *A&M Gerber Chiropractic LLC v GEICO General Insurance Co.*, 925 F.3d 1205, 1216 n.7 (11th Cir. 2019), whether the Eleventh Circuit can definitively establish the recoverability *vel non* of such damages is itself debatable.

9

presented to it) rule further that the Court erred in considering such diminution in evaluating the amount in controversy, the Court would continue to have subject matter jurisdiction because, at the moment of removal, the remaining elements of damages claimed by the plaintiffs placed more than $50,000 in controversy.

Count VI demands recovery for, *inter alia*, "property damages, incidental and consequential damages." (Doc. 1-7 at 10). Parker's interrogatory responses identified the damages being sought as including "the cost to remove and replace the entire stucco system" as well as "the cost of resolving problems" that included "water intrusion and mold growth," (Doc. 1-9 at 2-3), which were part of "a ripple effect of damages to other areas of the home." (Doc. 13 at 5). In their motion to remand, the plaintiffs insisted that the amount already expended on these matters prior to removal exceeded $133,000, (*id*. at 2, 3, 5, 6), far above the jurisdictional threshold.[6] Even completely ignoring diminution in value, much more than a preponderance of the evidence demonstrates that the amount in controversy at the time of removal exceeded $50,000.[7]

In their reply brief on motion to remand, the plaintiffs argued that "the proper formula for determining the amount in controversy" under Magnuson-Moss

---

[6] As explained in the Court's previous order, these materials were too vague to trigger the 30-day removal period, because they did not inform the defendants that the plaintiffs attributed all these damages to a defective stucco product under Count VI. (Doc. 25 at 3-4 n.4). In their motion to remand, however, the plaintiffs did precisely that, thereby confirming that the entire $133,000-plus is in controversy as to the Magnuson-Moss claim. And because the plaintiffs insisted that more than $50,000 had been in controversy under this claim continuously since they filed their third amended complaint, (Doc. 13 at 5), their statements constituted a permissible clarification of the amount in controversy at the time of removal rather than an impermissible post-removal alteration of that amount. *Pretka*, 608 F.3d at 751.

[7] In denying the plaintiffs' motion to remand, the Court expressly held that the plaintiffs' position in their principal brief, of itself, "established by a preponderance of the evidence that the amount in controversy for purposes of the MMWA claim was greater than $50,000 at the time of removal." (Doc. 25 at 7). The plaintiffs were thus on notice that their proposed question to the Eleventh Circuit – which does not challenge this ruling – could not affect the Court's subject matter jurisdiction and thus could not involve a controlling question of law regarding the existence *vel non* of such jurisdiction.

restricts recovery to the price of replacement, non-defective stucco (minus the value of the original, allegedly defective stucco, and minus the value of the plaintiffs' use of the defective stucco). The plaintiffs asserted that this formula precludes recovery for costs of labor and for other remediation costs. Because the plaintiffs estimated the cost of non-defective replacement stucco as approximately $20,000, they argued it was impossible for more than $50,000 to be in controversy under Count VI, even if the $13,586 cost of non-defective replacement stucco they had purchased as part of an early repair effort were also included. (Doc. 20 at 2-4 & 3 n.3).

The plaintiffs' proposed formula is simply wrong or, more precisely, incomplete. As the very authorities relied on by the plaintiffs reflect, a plaintiff may recover – in addition to the cost of replacement product – incidental and consequential damages as explicitly provided by Sections 7-2-714(3) and -715. The plaintiffs have made no showing that the costs of attempting to repair the defective stucco, the labor costs of removing and replacing the entire stucco system, or the costs of repair and/or replacement of other elements of the home damaged or compromised due to the "ripple effect" of the defective stucco,[8] do not fall within the ambit of consequential damages under Sections 7-2-714(3) and 715(2) so as to be recoverable under the Act,[9] and the plaintiffs in their motion to remand effectively admitted that the amount of such damages exceeds $133,000.

---

[8] In a post-removal filing, the plaintiffs asserted that "extensive structural work will be required to repair structural wood that has rotten [sic] and decayed to the point of resulting in large mushrooms and fungi growing out of the rotting wood. In turn, the cracks have allowed moisture in the walls and resulted in termite infestations." (Doc. 27 at 2).

[9] This Court has considered the costs of tear-out and installation of new product as consequential damages under Section 7-2-715(2). *McCollough Enterprises, LLC v. Marvin Windows & Doors*, 2010 WL 5014670 at *7 & n.21 (S.D. Ala. 2010). The Alabama Supreme Court has held that loss of crops due to breach of warranty as to a combine is an awardable consequential damage. *Massey-Ferguson, Inc. v. Laird*, 432 So. 2d 1259 (Ala. 1983).

The plaintiffs fault the Court for not "analyz[ing] how much of [their] claimed damages are attributable to [certain defendants'] faulty installation versus the stucco itself being defective." (Doc. 53 at 5). It is not the Court's role on a jurisdictional inquiry to determine the proper allocation of claimed damages between different defendants or causes; that is a role for the jury at trial. What matters at the jurisdictional stage is not "how much the plaintiffs are ultimately likely to recover" but "the amount that will be put at issue in the course of the litigation." *Pretka*, 608 F.3d at 751 (internal quotes omitted). By insisting in their motion to remand that their Magnuson-Moss claim implicates the full $133,000+ in pre-removal damages (not to mention continually accruing additional damages), the plaintiffs confirmed that they placed this entire amount at issue at the time of removal.

Because the Court would continue to have subject matter jurisdiction even were the Eleventh Circuit to answer the plaintiffs' proposed question favorably to them and to instruct the Court not to consider diminution in value of the home in calculating the amount in controversy, their proposed question does not involve a controlling question of law.

### B. Forum Manipulation.

The plaintiffs' second motion to remand was based on their deletion of the Magnuson-Moss claim, a deletion they admitted was for the precise purpose of engineering a "return to their chosen forum," which was their "preferred forum." (Doc. 27 at 2; Doc. 34 at 22). The Court concluded that the plaintiffs were thus engaged in "forum manipulation," which the Supreme Court recognizes as a "legitimate and serious" concern that should be "take[n] … into account" by a federal court in determining whether to retain a removed case after the plaintiff voluntarily eliminates a federal claim on which removal was based. *Carnegie-Mellon University v. Cohill*, 484 US. 343, 356 n.12, 357 (1988). (Doc. 35 at 10). The plaintiffs' second proposed certified question challenges the Court's

conclusion. Assuming without deciding that the proposed question raises a controlling question of law, the plaintiffs have not met their burden of demonstrating that it is one as to which there is "substantial ground for difference of opinion."

The plaintiffs propose that a substantial ground for difference of opinion exists whenever "'the issue is difficult and of first impression, a difference of opinion as to the issue exists within the controlling circuit, or the circuits are split on the issue.'" (Doc. 53 at 6 (quoting *Monroe County Employees' Retirement System v. Southern Co.*, 333 F. Supp. 3d 1315, 1328 (N.D. Ga. 2018)). The plaintiffs assert that "reasonable jurists can and do disagree whether dismissal of federal claims to procure remand is improper forum selection [sic]," based on two decisions from the Fifth Circuit and one from a sister court within the Eleventh Circuit. They argue that the Fifth Circuit cases reflect a split within the Fifth Circuit and that the sister court's decision reflects a difference of opinion within the controlling, Eleventh Circuit. (Doc. 39 at 7-8; Doc. 53 at 7-8).[10]

The initial problem with the plaintiffs' argument is that none of the cases on which they rely actually hold that deleting a federal claim on which removal was based, for the specific purpose of obtaining a remand to state court, does not constitute forum manipulation. The Court in *Enochs v. Lampasas County*, 641 F.3d 155 (5th Cir. 2011), stated only that the plaintiff's motion to amend his complaint so as to delete his federal claims "is not a particularly egregious form of forum manipulation, if it is manipulation at all." *Id*. at 160. This quote evinces skepticism regarding the seriousness of forum manipulation, but it plainly does not constitute a holding that the conduct at issue as a matter of law cannot constitute forum manipulation. The Court in *Watson v. City of Allen*, 821 F.3d 634 (5th Cir. 2016), merely quoted *Enochs*, *id*. at 643, and so no more holds that deleting a

---

[10] The plaintiffs discovered none of these cases. All three were first mentioned in the Court's order denying remand. (Doc. 35 at 8-9).

federal claim for the specific purpose of engineering a remand is not forum manipulation than does *Enochs*.[11] The Court in *Lake County v. NRG/Recovery Group, Inc.*, 144 F. Supp. 3d 1316 (M.D. Fla. 2001), ruled only that deleting a federal claim in order to obtain a remand does not "substantially implicat[e]" the "traditional aversion of federal courts to forum shopping," *id*. at 1321, not that such conduct does not constitute forum manipulation at all.

The second fatal flaw in the plaintiffs' argument is its assumption that a statement in a judicial opinion that deleting a federal claim for the purpose of engineering a remand is not forum manipulation would, of itself, demonstrate a "substantial ground for difference of opinion." Such a statement would reflect a difference of opinion, but it would not of itself reflect the existence of a "substantial ground" for that difference. As this Court has recognized, "a court faced with a motion for certification must analyze the strength of the arguments in opposition to the challenged ruling to decide whether the issue is truly one on which there is a substantial ground for dispute." *Shedd v. Wells Fargo Bank, N.A.*, 2016 WL 4565775 at *3 (S.D. Ala. 2016) (internal quotes omitted). Neither the plaintiffs nor the cases they cite offer any reasoned basis for questioning the Court's conclusion, based on the plain language and clear analysis of *Cohill*, that deleting a federal claim solely to regain a state forum constitutes forum manipulation, and they therefore fail to show a substantial ground for their difference of opinion. (Doc. 35 at 9-10).[12]

---

[11] The actual holding in both cases was that any forum manipulation did not outweigh the remaining factors governing the decision whether to remand. 641 F.3d at 161; 821 F.3d at 843.

[12] To the extent the plaintiffs' proposed question suggests an argument that the existence of forum manipulation depends on how swiftly after removal the plaintiff deletes the federal claim and seeks remand, they have similarly failed to show any substantial ground for difference of opinion. The *Cohill* Court equated "forum manipulation" with attempting to "regain a state forum simply by deleting all federal-law claims from the complaint and requesting that the district court remand the case," 484

14

### C.  Abuse of Discretion.

*Cohill* invests courts with discretion to decide whether to remand state claims "in the manner that best serves the principles of economy, convenience, fairness, and comity," and it includes forum manipulation as among the "factors to be considered" in this assessment.  484 U.S. at 357.  In denying the plaintiffs' second motion to remand, the Court ruled that "forum manipulation, when it exists, is to be assigned substantial weight in the Section 1367(c)/*Cohill* calculus." (Doc. 35 at 14).  This placed the onus on the plaintiffs to show that the remaining factors cumulatively weighed in their favor "by a sufficiently wide margin to overcome the impact of their forum manipulation." (*Id*.).  The Court assessed that judicial economy, convenience, and fairness were cumulatively neutral and that, given the absence of any unsettled or complex question of state law, comity did not weigh in the plaintiffs' favor with sufficient force to overcome their forum manipulation. (*Id*. at 15-19).  The Court therefore denied the motion to remand. (*Id*. at 19).

The plaintiffs' proposed third question does not address any of these rulings.  Instead, it seeks the establishment of a universal rule that would bypass them.  The plaintiffs propose that, regardless of the *Cohill* factors, it is always and necessarily an abuse of discretion not to remand a case in which the federal claim is deleted prior to the opening of discovery.  Blatant forum manipulation, equal or superior convenience in federal court, the absence of any unresolved or

---

U.S. at 357, without any suggestion that engaging in the same activity earlier rather than later would not constitute such manipulation.  Neither the plaintiffs nor any case they cite provides any rationale that could support such a dichotomy.

Moreover, the plaintiffs made no argument in support of their motion to remand that they could not have engaged in forum manipulation since they sought amendment and remand before entry of a scheduling order, and they have failed to show that they may or should obtain interlocutory appeal to present to the Eleventh Circuit an argument they did not make to this Court.  *See infra* Part C.

complicated state law issue – all would be rendered legally irrelevant, so long as the plaintiff accomplished his forum manipulation before entry of a Rule 16(b) scheduling order. This even though *Cohill* expressly rejects the idea that there is a "mandatory rule to be applied inflexibly in all cases" that state claims cannot be retained if the federal claims are eliminated before trial. 484 U.S. at 351 n.7.

The plaintiffs neither identify any case that has adopted their proposed rule nor advance any reasoned argument in support of it. They have thus failed to show that substantial grounds for difference of opinion exist as to whether such a rule should be adopted.

Moreover, the plaintiffs on motion to remand did not champion such a rule; on the contrary, they urged the Court to employ the *Cohill* "balance of factors" approach. (Doc. 27 at 4-6; Doc. 34 at 14-15). Even had the plaintiffs demonstrated substantial grounds for difference of opinion as to their proposed question, the Court would decline to certify to the Eleventh Circuit a question that the plaintiffs did not first seek to have resolved in this forum. As the Court has noted, "[c]ourts have declined to certify interlocutory appeals grounded in newly raised arguments." *Shedd*, 2016 WL 4565775 at *4 n.6 (citing cases); *accord Rodriguez v. Procter & Gamble Co.*, 499 F. Supp. 3d 1202, 1209 (S.D. Fla. 2020) ("[C]ourts have consistently rejected attempts to raise new arguments in a motion for interlocutory appeal …."); *Federal Trade Commission v. Surescripts, LLC*, 2020 WL 2571627 at *5 (D.D.C. 2020) ("In short, an argument not presented by Surescripts and not relied on by this Court cannot serve as the basis for § 1292(b) certification.") (citing cases); *Derrick Petroleum Services v. PLS, Inc.*, 2015 WL 224991 at *3 (S.D. Tex. 2015) ("Issues neither raised or addressed at trial are not appropriate for interlocutory review."); *Broad v. Hitts*, 2011 WL 5546298 at *2 (M.D. Ga. 2011) ("Amerisure cannot now raise new arguments for summary judgment in a motion for interlocutory appeal."). The appellate rule is similar. "We have refused to reach an issue posed by an order appealed under section 1292(b) where that issue was not addressed by the district court …." *Miller v.*

*Bolger*, 802 F.2d 660, 666 (3rd Cir. 1986); *accord Ryes v. BCS Insurance Co.*, 379 Fed. Appx. 412, 415 (5th Cir. 2010). The failure of the plaintiffs (who bear the burden as to all aspects of Section 1292(b)) to address their failure to first pose to this Court the question they seek to pose to the appellate court provides one more reason to deny relief.

## CONCLUSION

As to each of their proposed certified questions, the plaintiffs have failed to carry their burden of establishing all of the requirements for such relief. In the exercise of the Court's discretion in such matters, the plaintiffs' motion to certify questions for interlocutory appeal is **denied**.

DONE and ORDERED this 7th day of July, 2022.

s/ WILLIAM H. STEELE<br>
UNITED STATES DISTRICT JUDGE