IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN H. PARKER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 21-0425-WS-B |
| | ) |
| EXTERIOR RESTORATIONS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

On July 15, 2022, the plaintiffs, with judicial permission, filed their sixth amended complaint. (Doc. 73). The primary purpose of this pleading was to add Terry Dittenber as a defendant. (Doc. 60 at 2-3). This matter is now before the Court on Dittenber's motion, invoking Rule 12(b)(6), to dismiss all counts pleaded against him in the sixth amended complaint. (Doc. 93). The plaintiffs have filed a response and Dittenber a reply, (Docs. 97, 100), and the motion is ripe for resolution.[1] After careful consideration, the Court concludes the motion to dismiss is due to be granted in part and denied in part.

## BACKGROUND

As is evident from the existence of seven iterations of the complaint, this action, which centers around stucco materials applied to a residence, has accreted over time. The original complaint, filed in January 2020, named the homeowner ("Parker") as plaintiff and an exterior contractor and its representative

---

[1] The plaintiffs' motion for leave to file an exhibit under seal, (Doc. 101), is **granted**.

(collectively, "Exterior") as defendants.  (Doc. 1-2 at 2-10).  The first amended complaint, filed in March 2020, added a fifth cause of action.  (*Id*. at 21-28).  The second amended complaint, filed in June 2020, added allegations but no new claims or parties.  (*Id*. at 90-97).  The third amended complaint, filed in March 2021, added the general contractor ("BMH") as a plaintiff, added the stucco manufacturer ("Sto"), the stucco retailer ("Capitol"), and the post-application stucco inspector ("WCS") as defendants, and added a sixth and seventh cause of action.  (*Id*. at 240-50).  The fourth amended complaint, filed in June 2021, added am eighth and ninth cause of action.  (Doc. 1-4 at 92-104).  The fifth amended complaint, filed in May 2022, deleted the sole federal cause of action.  (Doc. 37).

      According to the sixth amended complaint, Dittenber is the owner and principal of WCS.  In July 2019, Dittenber inspected the property and announced in writing that "[n]othing appeared out of sorts, a typical stucco application.  Upon completion Sto will issue our Standard warranty."  Dittenber returned to the property in October 2019 and stated that the product was not defective, the work was satisfactory, and a warranty would be issued upon completion.  In October 2018, prior to his interaction with the plaintiffs, Dittenber executed a sales representative agreement with Sto, purportedly on behalf of Building Project Solutions, an entity that dissolved in 2002.  Dittenber thus may have executed the agreement in his individual capacity rather than as an agent of WCS.  The agreement with Sto does not expressly provide Dittenber with authority to bind Sto.  Therefore, Dittenber's statements to the plaintiffs were made either individually or in his capacity at WCS, and were made either individually or as representative of Sto.  Dittenber knew or should have known that the plaintiffs had concerns and that he was being called out to provide assurances that there were no problems with the stucco or its installation.  The plaintiffs relied on Dittenber's representations by allowing Exterior to continue the installation work.  (Doc. 73 at 2, 6, 7, 8).

      The causes of action asserted against Dittenber are as follows:

- Count Five          breach of warranty
- Count Six           Alabama extended manufacturer's liability doctrine ("AEMLD")[2]
- Count Seven      negligence
- Count Eight       wantonness
- Count Nine        negligent misrepresentation and suppression
- Count Twelve     fraudulent misrepresentation and suppression

(Doc. 73 at 15-20, 22-23).

Dittenber argues that Counts Five and Twelve fail to state a claim against him and that the remaining counts are barred by the applicable statutes of limitation. (Doc. 93 at 4).

## DISCUSSION

"If, on a motion under Rule 12(b)(6) …, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Both sides have presented materials beyond the pleadings, and the plaintiffs ask the Court to convert Dittenber's motion into one for summary judgment and either postpone its resolution until additional discovery responses are available or at least consider the deposition materials they have already submitted. (Doc. 97 at 2-3). The Court declines to consider matters outside the pleadings, and the plaintiffs' request that the Court do so, construed as a motion, is **denied**. *See generally Harper v. Lawrence County*, 592 F.3d 1227, 1232 (11th Cir. 2010) (a judge "excludes" material beyond the pleadings for purposes of Rule 12(d) by "not considering" them).

---

[2] Count Six is styled as "Alabama Extended Liability Doctrine," (Doc. 73 at 15), a phrase that appears in no known Alabama appellate decision. Dittenber characterizes the claim as one under the AEMLD, (Doc. 93 at 11), and the plaintiffs have not disagreed with that nomenclature.

### A. Breach of Warranty.

Count Five alleges that Dittenber, as agent and representative of Sto, warranted that the Sto product was merchantable and "fit for the ordinary purposes for which it was intended." If the plaintiffs do not have an express warranty with Sto, then Dittenber's statements issued in his individual capacity created implied warranties of fitness, merchantability, and workmanship. In the alternative, given Sto's failure to issue any warranty, Dittenber "should be precluded from denying the existence of any warranty obligations owed by him or WCS," based on "principles of estoppel and detrimental reliance." (Doc. 73 at 13-15).

The parties agree that Count Five is governed by Alabama's version of the Uniform Commercial Code ("UCC"). Express warranties are created "by the seller." Ala. Code § 7-2-313(1). Implied warranties of merchantability are made by "the seller." *Id*. § 7-2-314(1). Implied warranties of fitness for a particular purpose are made by "the seller." *Id*. § 7-2-315. Dittenber argues the sixth amended complaint fails to allege that he is a seller of the subject stucco and that as a matter of law he is not a seller within the contemplation of the UCC. (Doc. 93 at 5-8).

"In this article unless the context otherwise requires: … 'Seller' means a person who sells or contracts to sell goods.'" Ala. Code 7-2-103(1)(d). The plaintiffs, (Doc. 97 at 18), rely exclusively on *Bishop v. Faroy Sales*, 336 So. 2d 1340 (Ala. 1976), which states that "[s]ellers … are not limited by definition to retailers [but extend to] anyone who sells, including a manufacturer or distributor." *Id*. at 1343. The sixth amended complaint, however, does not allege that Dittenber is a retailer, manufacturer, or distributor; instead, it alleges he is Sto's "sales agent" for the region including south Alabama. (Doc. 73 at 14). A sales agent or sales representative is not a "seller" within Alabama's warranty provisions; instead, such a person is an agent of the seller. *Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207, 1218 (N.D. Ala. 2006); *Gordon v. Pfizer, Inc*., 2006 WL

2337002 at *8 (N.D. Ala. 2006); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337 at *7 (M.D. Ala. 2005).

The plaintiffs argue that Dittenber is a "seller" for warranty purposes "because he is integrally involved in the selling and distribution process," he receives a commission, and (it "must be presumed" from his visits to the property), "he intends the Sto materials he sells and markets to arrive in the hands of consumers." (Doc. 97 at 18). No doubt a sales agent wants to sell product (especially when his compensation depends on it) and takes reasonable steps to do so, but that does not make Dittenber a "seller" within the UCC any more than were the sales agents in the cases cited above.

Even if Dittenber as sales agent could ever be considered a "seller" within Alabama's UCC (and he cannot), there is no allegation that he sold any of the stucco involved in this action. At the risk of stating the obvious, a warranty can apply only to goods sold "by the seller to the buyer," Ala. Code § 7-2-313(1)(a), only to goods included in "a contract for their sale," *id*. § 7-2-314(1), and only to goods sold by "the seller" to "the buyer." *Id*. § 7-2-315. Even if Dittenber, as a "seller," ever sold other stucco to other purchasers, there is no allegation that he sold the stucco applied to Parker's home to anyone – not to Capitol, not to Exterior, not to BMH, not to Parker. On the contrary, the sixth amended complaint alleges without qualification that, "[d]uring the course of performing their contractual obligations to [the plaintiffs], [Exterior] provided stucco materials manufactured by Sto[, which] Sto stucco materials were purchased by [Exterior] from Capitol." (Doc. 73 at 7).

As noted, Count Five alleges that, "given Sto's failure to issue any warranty, Dittenber should be precluded from denying the existence of any warranty obligations owed by him or WCS by principles of estoppel and detrimental reliance." (Doc. 73 at 14). The plaintiffs appear to rely on a theory of warranty by estoppel or something to that effect. As curious as the theory sounds, Dittenber has not addressed it, and he cannot obtain dismissal without doing so.

5

### B. Fraudulent Misrepresentation and Suppression.

Count Twelve is based on the assumption it is ultimately determined that Dittenber had no authority to bind Sto by his statements to the plaintiffs. In that event, "Dittenber knew his capacity was limited in the agreement with Sto, and perhaps could not bind Sto, but by his conduct and action he misrepresented and suppressed his true status by assuring Plaintiffs he could bind Sto." (Doc. 73 at 22-23).

Dittenber ignores this claim. Instead, he identifies the fraud alleged in Count Twelve as being Dittenber's statements that Sto would issue its warranty upon completion of the project. Because this would be a representation as to a future event, Dittenber argues the plaintiffs were required to allege the additional elements of promissory fraud, *viz.*, an intent not to perform and an intent to deceive. (Doc. 93 at 9-10).

Count Twelve is not artfully worded, and Dittenber's confusion is understandable, but it is plain from the quoted language (the only portion of Count Twelve that accuses Dittenber of "misrepresent[ing] and suppress[ing]" anything) that the claim is limited to Dittenber's alleged misrepresentation and/or suppression regarding his authority *vel non* to bind Sto. Because his authority (or lack thereof) was an existing fact at the time, promissory fraud is not implicated, and the plaintiffs were not required to plead the additional elements essential to such a claim.

Dittenber's only other argument is that Count Twelve fails to identify what he obtained as a consequence of his alleged fraud. (Doc. 93 at 11).[3] The plaintiffs respond that Dittenber obtained continued commissions on sales of Sto products

---

[3] "A plaintiff satisfies Rule 9(b) if the complaint includes … what the defendants obtained as a consequence of the fraud." *Crawford's Auto Center, Inc. v. State Farm Mutual Automobile Insurance Co.*, 945 F.3d 1150, 1159 (11th Cir. 2019) (internal quotes omitted).

and a continued relationship with Exterior. (Doc. 97 at 19, 21). Dittenber in his reply does not address this assertion or even repeat his argument. He has thus failed to demonstrate that Count Twelve fails to satisfy Rule 9(b).[4]

### C.  Statute of Limitations.

As noted, the sixth amended complaint, which named Dittenber as a defendant for the first time, was filed on July 15, 2022. Dittenber, citing appropriate authority, identifies the statute of limitations as to the plaintiffs' claims under theories of AEMLD, negligence, wantonness, and negligent misrepresentation/suppression as two years. (Doc. 93 at 11-14). The plaintiffs do not disagree. (Doc. 97 at 22-23).

#### 1.  AEMLD.

Count Six alleges that the defendants, including Dittenber, "manufactured, distributed, sold, installed, inspected, and approved the defective Sto product incorporated into PARKER's Property." (Doc. 73 at 15). Count Six incorporates the allegation that, no later than June 2019, the plaintiffs knew the stucco product "was peeling away from the house when it became wet and was allowing water into the Property." (*Id*. at 7). Count Six also incorporates the allegations that "[t]he issues with the Sto product at the Property [thereafter] continued and worsened" between June and October 2019, that Dittenber stated on or about October 15, 2019 that the product was not defective, and that this statement was false. (*Id*. at 8). Finally, although not expressly incorporated into Count Six, the sixth amended complaint alleges that, as of October 15, 2019, "[i]t was evident from the mere appearance of the Sto product and [the plaintiffs'] contention that

---

[4] The plaintiffs attempt to expand their fraud claims as alleged in Counts Nine and Twelve by attributing to them allegedly fraudulent conduct that patently is not asserted therein – indeed, that was admittedly unknown to them when they filed the sixth amended complaint. (Doc. 97 at 20, 23-24, 26). In a word, no. The plaintiffs' fraud claims are confined in scope as described in this order.

7

water was leaking into the house that either the product was defective or the work not performed per Sto's guidelines, instructions and specifications." (*Id*. at 19). Dittenber concludes from these allegations that the plaintiffs' AEMLD claim accrued, and the limitations period began to run, no later than October 15, 2019, thus expiring no later than October 15, 2021. (Doc. 93 at 11-12). The plaintiffs do not disagree. (Doc. 97 at 22-23).

### 2. Negligence and wantonness.

Count Seven alleges that Dittenber negligently breached his duties to the plaintiffs "by failing to conduct a proper and detailed inspection of PARKER's Property when he was asked to do so on two occasions, failing to communicate with Sto about the complaints made by [the plaintiffs] regarding the Sto product and its application at PARKER's Property, and to otherwise act reasonably as a sales representative and inspector of a product that required proper training to install." (Doc. 73 at 17). Count Eight incorporates the allegations of Count Seven and further alleges that Dittenber's "acts and omissions were done with a wanton and/or reckless disregard for the consequences." (*Id*. at 18). Dittenber points out that the "two occasions" on which Counts Seven and Eight rest occurred in June and October 2019, and he concludes that the plaintiffs' negligence and wantonness claims accrued, and the limitations period began to run, no later than October 15, 2019, expiring no later than October 15, 2021. (Doc. 93 at 13-14). The plaintiffs again do not disagree. (Doc. 97 at 22-23).

### 3. Fraud.

Count Nine alleges that, on the two occasions referenced above in July and October 2019, Dittenber stated that "there was nothing wrong, the work was being performed properly, and that Sto would issue its warranty upon completion," and that Dittenber "negligently misrepresented that there was nothing wrong with the product or work performed by [Exterior], or … suppressed that the product and/or

work was defective." (Doc. 73 at 19-20). Dittenber assumes rather than demonstrates that the plaintiffs' fraud cause of action accrued, and the limitations period began to run, no later than October 15, 2019, the last date the alleged misrepresentations were made. (Doc. 93 at 14). This time, the plaintiffs do disagree.

The plaintiffs invoke Alabama's "discovery rule." (Doc. 97 at 25). "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Ala. Code § 6-2-3. Under this provision, "a fraud claim does not accrue until the injured party discovers or should have discovered the facts constituting the alleged fraud." *Woodall v. Alfa Mutual Insurance Co.*, 658 So. 2d 369, 375 (Ala. 1995); *accord Deupree v. Butner*, 522 So. 2d 242, 246 (Ala. 1988).

Dittenber first addresses the discovery rule in his reply brief, noting that the original complaint alleges that "the work performed by the Defendants is deficient, defective, and dilatory." (Doc. 1-2 at 4). Because the original complaint was filed in January 2020, Dittenber concludes that the plaintiffs knew or should have known of his alleged fraud by that date, such that the limitations period expired in January 2022, six months before the sixth amended complaint was filed. (Doc. 100 at 7-8).

The threshold problem with Dittenber's argument is that he did not assert it until his reply brief. "As this Court has repeated many times, district courts, including this one, ordinarily do not consider arguments raised for the first time on reply." *Great American Insurance Co. v. PowerSouth Energy Cooperative*, 2022 WL 2308910 at *3 (S.D. Ala. 2022) (internal quotes omitted). Dittenber has neither explained why he did not address the well-known discovery rule in his

9

principal brief nor offered any reason the Court should not hew to its usual practice.[5]

Other unaddressed problems plague Dittenber's position. For example, he has failed to reconcile the principle that "[a] dismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred"[6] with his reliance on a long-superseded prior iteration of the complaint. *See, e.g., Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007) ("[A]n amended complaint supersedes the initial complaint and becomes the operative pleading in the case."). Dittenber encourages the Court to take judicial notice of the superseded complaint and its date of filing, (Doc. 100 at 7-8), but he has not explained how doing so would satisfy the "face of the complaint" requirement.

Even were the Court to reach and accept Dittenber's judicial notice argument, most of Count Nine would survive. Because it was not a party plaintiff to the original complaint, that document could not satisfy the discovery rule as to BMH.[7] In addition, Count Nine alleges misrepresentations and/or suppressions concerning both the quality of the work and the quality of the product, and Dittenber cites nothing from the original complaint that even remotely touches on the plaintiffs' actual or constructive awareness that the product was defective.

---

[5] This is not the first time the Court has applied this rule in rejecting as untimely a discovery-rule argument first advanced in a reply brief on motion to dismiss. *See SE Property Holdings, LLC v. Saint Family Limited Partnership*, 2017 WL 1628898 at *7 & n.14 (S.D. Ala. 2017).

[6] *United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1085 (11th Cir. 2018) (internal quotes omitted).

[7] BMH was first named as a plaintiff in the third amended complaint, which was not filed until March 2021. (Doc. 1-2 at 240).

### D. Relation Back.

As addressed in Part C, Counts Six, Seven and Eight as to Dittenber were filed after the relevant statutes of limitations expired. Those claims are thus due to be dismissed unless they are deemed to relate back to the filing of an earlier iteration of the complaint prior to October 15, 2021. "An amendment to a pleading relates back to the date of the original pleading when … the law that provides the applicable statute of limitations allows relation back …." Fed. R. Civ. P. 15(c)(1)(A). The parties agree that Alabama law provides the rules of relation back to be applied here. (Doc. 60 at 3; Doc. 93 at 14-15; Doc. 97 at 22).

> An amendment of a pleading relates back to the date of the original pleading when … the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading [and] the amendment … *changes the party or the naming of the party* against whom a claim is asserted if ..., within the applicable period of limitations …, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a *mistake concerning the identity of the proper party*, the action would have been brought against the party ….

Ala. R. Civ. P. 15(c)(2), (3) (emphasis added).

The parties agree that the claims against Dittenber arise out of the same conduct, transaction or occurrence as is set forth in previous iterations of the complaint. The plaintiffs argue that the balance of the rule's requirements are met because: (1) WCS has been a named defendant since March 2021; (2) Dittenber is WCS's sole member and manager; (3) Dittenber has at all times had notice of the claims against WCS; (4) the claims now asserted against Dittenber have been asserted against WCS since March 2021 and stem from Dittenber's acts and omissions; (5) Dittenber in his 2019 communications, and WCS in its discovery responses, falsely represented that WCS rather than Dittenber was Sto's agent and sales representative, leading the plaintiff to believe that "WCS was the entity that

11

was legally responsible, not Dittenber the individual"; and (6) Dittenber is now being named as a defendant in order "to sue the correct party notwithstanding WCS's misrepresentations." (Doc. 97 at 23).

The plaintiffs' one-page argument is non-responsive to Dittenber's argument that they cannot satisfy the italicized portions of Rule 15(c)(3). Dittenber argues that the rule applies only if the amended pleading *changes* the defendant from one person or entity to a different person or entity (or, without changing the defendant, corrects the name of that defendant), while the sixth amended complaint does not *change* the defendant (or the name of the defendant) from WCS to Dittenber but *adds* Dittenber as another defendant along with WCS. (Doc. 93 at 15-18). Dittenber also argues that Rule 15(c)(3) applies only if the plaintiff made a mistake as to *identity*, while the plaintiffs made only a mistake of *legal judgment* in failing to name Dittenber (with or without also naming WCS) initially. (*Id*. at 18-24).

In *Ex parte Profit Boost Marketing, Inc.*, 254 F.3d 862 (Ala. 2017), the plaintiff sued two named defendants and various fictitious defendants. *Id*. at 864. After the limitations period expired, the plaintiff filed an amended complaint that "added … a new defendant rather than substituted for a previously identified but fictitiously named defendant." *Id*. at 865; *accord id*. at 868, 870. The Alabama Supreme Court ruled that Rule 15(c)(3) was not satisfied because "no substitution occurred." *Id*. (emphasis in original).

In *Ex parte Dail*, 337 So. 3d 1191 (Ala. 2021), the plaintiff filed suit against one driver out of several involved in a multi-vehicle accident. The complaint included no fictitious defendants. After the limitations period expired, the plaintiff filed an amended complaint adding other motorists as defendants. *Id*. at 1192. Relying on *Profit Boost Marketing*, the *Dail* Court held that the amended complaint did not satisfy Rule 15(c)(3) because it "added the Dails as parties, rather than substituting them for incorrectly named parties, after the limitations period had expired, while maintaining [the plaintiff's] claims against Tyner, the

12

original defendant." *Id*. at 1194.  Because it was thus "apparent that the Dails were not 'included in or contemplated by [the] original complaint[,]' Rule 15(c)(3) d[id] not apply to permit [the plaintiff's] amended complaint to relate back to the filing of her original complaint." *Id*. (quoting *Profit Boost Marketing*, 254 So. 3d at 870).

In light of *Dail* and *Profit Boost Marketing*, the plaintiffs' action in naming Dittenber as an additional defendant, rather than substituting him for WCS, precludes them from satisfying Rule 15(c)(3).

The Alabama Supreme Court considers "federal decisions construing the Federal Rules of Civil Procedure [as] persuasive authority in construing the Alabama Rules of Civil Procedure," and this approach extends to Rule 15(c).  *Ex parte Novus Utilities, Inc*., 85 So. 3d 988, 996 (Ala. 2011).  The federal rule, like the state rule, requires that the new defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).  "[M]aking a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity." *Krupski v. Costa Crociere S.p.A*., 560 U.S. 538, 549 (2010).

The plaintiffs acknowledge that they have at all relevant times been aware that the words and conduct for which they seek to hold WCS liable, including in particular the July and October 2019 visits to the property and the assurances given at those times, were those of Dittenber, WCS's sole owner.  (Doc. 60 at 2-3).  The plaintiffs thus admit they were at all relevant times aware of who Dittenber is and what he did.  By suing WCS for Dittenber's words and conduct, the plaintiffs reveal their awareness at all relevant times that Dittenber's words and conduct were actionable and that WCS and Dittenber were in a principal-agent relationship.  Finally, the plaintiffs acknowledge their awareness that "a man [such as Dittenber] is personally liable for all torts committed by him [including fraud

13

and negligence] notwithstanding he may have acted as the agent or under directions of another. … Corporate officers are liable for their torts, although committed when acting officially." (Doc. 97 at 24 (internal quotes omitted)).[8] The plaintiffs' deliberate choice to sue only WCS, when they had all the factual and legal information necessary to support suing both WCS and Dittenber, "is the antithesis of making a mistake concerning the proper party's identity." *Krupski*, 560 U.S. at 549.

As noted, the plaintiffs assert they were misled regarding the relationship between Dittenber, WCS, and Sto. Whereas they understood when they sued only WCS that WCS was Sto's sales representative and/or agent, they say they learned recently that Sto's relationship may have been with Dittenber directly, to the exclusion of WCS. These circumstances, though problematic for the plaintiffs, patently do not support their assertion that, until this recent discovery, only WCS was "legally responsible, not Dittenber the individual." (Doc. 97 at 23). As the person they at all relevant times knew to have made the allegedly negligent, wanton and/or fraudulent inspections and statements/omissions, Dittenber was, by the plaintiffs' own legal authority, at all relevant times subject to liability to them for his words and conduct, regardless of whether he acted as WCS's agent, as Sto's agent (or sub-agent, via WCS), or completely on his own.

The plaintiffs' decision to pursue only WCS, even though Dittenber was always and obviously an available additional defendant, was no doubt a reasonable one, but it carries consequences. One of them is that the plaintiffs cannot at this

---

[8] The Court has made the same observation. *McCrory v. Costco Wholesale Corp.*, 584 F. Supp. 3d ___, ___ n.15 (S.D. Ala. 2022) ("If tortious acts are committed by the agent within the scope of an agency, both the principal and agent are joint tortfeasors; the injured party is not obligated to join both tortfeasors and may sue either singly."); *HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232, 1245 n.14 (S.D. Ala. 2006) ("It is well established that an agent is not relieved of liability for tortious acts simply because he engages in such conduct on behalf of another.").

late date add Dittenber as a defendant to their AEMLD, negligence, and wantonness claims after realizing their case against WCS may have holes in it.

## CONCLUSION

For the reasons set forth above, Dittenber's motion to dismiss is **granted** with respect to Counts Six, Seven, and Eight and with respect to all aspects of Count Five except warranty by estoppel. The foregoing claims are **dismissed** as to Dittenber. The motion to dismiss is **denied** with respect to Counts Nine and Twelve and with respect to the warranty-by-estoppel aspect of Count Five.

DONE and ORDERED this 26th day of September, 2022.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE