IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN H. PARKER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 21-0425-WS-B |
| | ) |
| EXTERIOR RESTORATIONS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the plaintiffs' motion for leave to file a seventh amended complaint. (Doc. 121). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 121, 133, 135, 137, 141-44), and the motion is ripe for resolution.[1] After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

## BACKGROUND

As recounted in previous Court orders, this action centers around stucco materials applied to a residence. The original complaint was filed in state court in January 2020 by the homeowner ("Parker") against the exterior contractor and its representative (collectively, "Exterior"). (Doc. 1-2 at 2-10). The third amended complaint, filed in March 2021, added the general contractor ("BMH") as a second plaintiff and added the stucco manufacturer ("Sto"), the stucco retailer ("Capitol"),

---

[1] The motion for leave to file a sur-reply, (Doc. 146), the purpose of which is to address matters not relevant to the Court's disposition of the plaintiffs' motion, is **denied**. The plaintiffs' motions to file exhibits, (Docs. 151, 153), filed six days after briefing closed and the motion for leave to amend was taken under submission, (Doc. 122), are **denied**. The proposed exhibits, (Docs. 152, 154), are **stricken**.

and the post-application stucco inspector ("WCS") as defendants, with a total of seven causes of action alleged against various groupings of the defendants. (*Id*. at 240-250).

The defendants effected a removal of the action in September 2021 based on the plaintiffs' assertion of a federal claim. (Doc. 1). The plaintiffs filed a motion to remand in October 2021, (Doc. 13), which the Court denied in December 2021. (Doc. 25). In January 2022, the plaintiffs filed a motion for leave to amend the complaint to delete the federal claim and a second motion to remand based on the absence of a federal question. (Doc. 27). At the same time, the plaintiffs filed a motion to stay all discovery and scheduling deadlines pending a ruling on their other motions. (Doc. 28). The Magistrate Judge granted this motion on January 31, 2022, ordering the parties to file their Rule 26(f) report within seven days of the Court's order resolving the plaintiffs' motions to amend and remand. (Doc. 31).

On April 27, 2022, the Court entered its order granting the motion to amend and denying the motion to remand. (Doc. 35). The parties thereupon filed their Rule 26(f) report on May 4, 2022, in which they jointly requested a deadline of July 1, 2022 to amend the pleadings. (Doc. 36 at 12). The Magistrate Judge held a scheduling conference on May 20, 2022 and issued a Rule 16(b) scheduling order on June 1, 2022, which adopted the July 1 deadline for amended pleadings that the parties had requested. (Doc. 51 at 2).

On the July 1 deadline, the plaintiffs filed a motion for leave to file a sixth amended complaint, for the purpose of naming an additional defendant ("Dittenber") and adding claims of negligent and fraudulent misrepresentation and suppression against all defendants. (Doc. 60). The Court granted this motion, (Doc. 72), referring to the Magistrate Judge an embedded motion for an extension until September 7 of the July 1 deadline for filing motions for leave to amend the pleadings. (Doc. 60 at 3-4). The Magistrate Judge denied this motion but left the plaintiffs free to claim good cause under Rule 16(b)(4) should they seek leave to

2

amend the complaint following the defendants' August depositions. (Doc. 87 at 3-4). The subject depositions having concluded in late August, (Doc. 142 at 12), the plaintiffs filed the instant motion for leave to amend on September 30, 2022.

## DISCUSSION

"A schedule [established under Rule 16(b)] may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "This good cause standard precludes modification unless the schedule could not 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment). "If a party was not diligent, the good cause inquiry should end." *MidAmerica C2L Inc. v. Siemens Energy Inc.*, 25 F.4th 1312, 1335 (11th Cir. 2022) (internal quotes omitted). "The lack of diligence that precludes a finding of good cause is not limited to a plaintiff who has full knowledge of the information with which it seeks to amend its complaint before the deadline passes. That lack of diligence can include a plaintiff's failure to seek the information it needs to determine whether an amendment is in order." *Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 n.3 (11th Cir. 2009). The ultimate burden of establishing good cause rests on the movant, *Longmire v. City of Mobile*, 2017 WL 63022 at *1 (S.D. Ala. 2017), but the Court's scrutiny of good cause depends on the arguments the non-movant chooses to raise.

For purposes of evaluating the plaintiffs' diligence *vel non*, the progress of this lawsuit may be divided into several segments: (1) from January 2020 through September 29, 2021, when the action lay in state court; (2) from September 29, 2021 (the date of removal) through January 31, 2022 (when the Rule 26(f) report was due); (3) from January 31 (when the Magistrate Judge stayed discovery) through April 27, 2022 (when the Court denied the plaintiffs' second motion to remand); and (4) from April 27 through July 1, 2022.

Although the action was filed in January 2020, it was not until March 2021 that Sto, Capitol, and WCS were added as defendants. By the time of removal six months later, the plaintiffs had substantially completed paper discovery as to all defendants, as the defendants themselves acknowledge. (Doc. 135 at 3; Doc. 137 at 5). Moreover, on five separate occasions between June 24 and August 25, 2021,[2] the plaintiffs solicited or proposed dates for the defendants' depositions, but scheduling conflicts prevented any agreement or actual depositions prior to removal. (Doc. 137-3). The record thus reflects diligence by the plaintiffs in pursuing discovery in state court.[3]

Once the defendants removed the action, discovery was subject to Rule 26. Subject to certain listed exceptions, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). The only exception potentially relevant here is "stipulation." *Id*. Because a motion to remand was promptly filed three weeks after removal, the Magistrate Judge entered no order directing the parties to confer and file a Rule 26(f) report. Thus, the plaintiffs could depose the defendants only by stipulation.

Following removal, the plaintiffs were deposed by agreement. (Doc. 133 at 5). The parties also agreed on deposition dates for the defendants in November 2021. (Doc. 141-2). The defendants, however, withdrew their agreement when the plaintiffs proposed that their depositions be taken under the state court style

---

[2] The specific dates were June 24, June 30, July 20, August 23, and August 25.

[3] WCS says that, because it responded to the plaintiffs' inquiries by offering several dates in September 2021 for its deposition, the plaintiffs "had the opportunity" to take that deposition before July 2022. (Doc. 137 at 7). Viewed in a vacuum, perhaps. The plaintiffs, however, were seeking four depositions, not just one, and some or all of the defendants were insisting that the plaintiffs' depositions come first, and these parameters could not be satisfied using the dates proposed by WCS. (Doc. 137-3). These parameters, which WCS does not challenge as illegitimate, served to complicate and delay the scheduling of depositions, but they do not indicate that the plaintiffs lacked diligence in pursuing WCS's deposition or any other.

(apparently to avoid signaling the plaintiffs' acceptance of federal jurisdiction while their motion to remand remained pending), without prejudice to the defendants' position on the propriety of removal. (*Id.* at 2). The defendants responded that, "[s]ince it appears we are in disagreement on this point, we think it best to postpone further depositions until the Court rules on the motion to remand." (*Id.* at 1).[4] No defendant asserts, and the Court cannot conclude, that the plaintiffs' position was insupportable or inconsistent with the diligent pursuit of discovery. For lack of a stipulation, the plaintiffs could not conduct depositions until after their motion to remand was resolved, the Magistrate Judge entered a preliminary scheduling order, and the parties held a Rule 26(f) conference.

The Court denied the motion to remand on December 16, 2021. (Doc. 25). The Magistrate Judge entered a preliminary scheduling order the next day, requiring submission of a Rule 26(f) report by January 31, 2022. (Doc. 26). The parties held their Rule 26(f) conference on January 19, 2022, (Doc. 36 at 1), satisfying Rule 26(d)(1). However, the plaintiffs had by then filed a second motion to remand, (Doc. 27), along with a motion to stay all discovery and scheduling deadlines pending resolution of their motion to remand. (Doc. 28). No defendant objected to this motion, which the Magistrate Judge accordingly granted on January 31, 2022, (Doc. 31), effectively staying discovery. No defendant asserts, and the Court cannot conclude, that the plaintiffs' unopposed request for a stay while their motion to remand was pending was insupportable or inconsistent with the diligent pursuit of discovery.

The Court's order denying the plaintiffs' second motion to remand was docketed on April 27, 2022. (Doc. 35). One week later, the parties filed their Rule 26(f) report. (Doc. 36). Less than two weeks after that, on May 17, 2022, the plaintiffs proposed deposition dates – 24 of them – on or preceding the July 1

---

[4] Sto's assertion that the depositions were cancelled "at the request of plaintiffs' counsel," (Doc. 135 at 4-5, 7), which cites page 2 but not page 1 of this exhibit, is incorrect.

deadline. (Doc. 142-1 at 2). The plaintiffs continued to push for early depositions on May 18 and May 25. (Doc. 142-1 at 3; Doc. 142-2 at 4). After a flurry of emails on the latter date, it was determined that the depositions could not occur until August. (Doc. 142-2).

No defendant faults the plaintiffs for not inquiring about deposition dates before the Court ruled on the motion to remand, and the Court would not credit any such objection.[5] Nor does any defendant fault the plaintiffs for not inquiring about deposition dates between April 27 and May 17, and the Court would not credit any such objection.[6] As of May 17, the plaintiffs plunged into the scheduling of depositions, and by May 25 the earliest possible dates had been identified as arriving in mid-August. This sequence of events reflects that the plaintiffs were diligent and that, despite such diligence, the July 1 deadline could not be met.[7]

The chronology captured above strongly supports the plaintiffs' diligence in seeking the defendants' depositions. To avoid this conclusion, the defendants offer a number of vague and conclusory objections. As discussed below, none of them is meritorious.

---

[5] Because the parties could not know when the Court might rule or whether the Court would grant the motion to remand, it would have been idle to tentatively schedule depositions.

[6] The defendants identify no evidence that, had the plaintiffs only asked about depositions two or three weeks earlier, they could have been held by July 1. Thus, even assuming the plaintiffs were not diligent between April 27 and May 17, this brief delay had no causal connection with the inability to accomplish the depositions by July 1 and thus cannot be a basis for denying leave to amend.

[7] Sto says that, on May 19, 2022, its counsel offered numerous dates for Sto's deposition, seven of which were on or before July 1, and Sto faults the plaintiff that "none were accepted." (Doc. 135 at 5, 7). All Sto's counsel offered, however, were dates that *counsel* could be available for deposition, not Sto. (Doc. 135 at 24). Counsel explicitly stated that "I … can be available to be in Mobile for depositions" on certain dates but that "I **have not** checked with them [his client] about their available dates." (*Id.* (emphasis in original)).

First, Exterior argues that the plaintiffs' inability despite their diligence to take the defendants' depositions by July 1 is irrelevant, because the plaintiffs before that date could have obtained the same information through written discovery. (Doc. 133 at 4).  Unsurprisingly, Exterior cites no authority for the remarkable proposition that interrogatories are equivalent to depositions for determining the underlying facts.  As Exterior's responses to the plaintiffs' interrogatories amply reflect, interrogatories are a good tool for obtaining basic threshold information such as identifying persons involved in applying stucco to Parker's home and identifying other owners and contractors for whom Exterior has performed work, (Doc. 141-1 at 50-51, 52-53), but utterly inadequate for obtaining specific information about even such a simple and straightforward matter as Exterior's training and experience with the Sto product applied to Parker's home.  As is typical of its interrogatory answers, Exterior's response was grudging, laden with baseless objections, curt, shallow, and silent as to most of the specifics requested.[8]  It cannot be seriously imagined that Exterior, or any other defendant, would have responded with any greater degree of clarity or completeness to additional interrogatories posed in lieu of deposition questions,

---

[8] Describe in detail any training or experience You have with the stucco system used on the Project.  Include in Your response any courses You took and certifications You received, approximate dates for same, and Identify any individuals from whom You received said training, certifications, and/or experience.

RESPONSE:  Defendants object to this Interrogatory on the basis that it is overly broad, unduly burdensome, and seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.  Specifically, this Interrogatory is not reasonably limited in time, scope, or circumstances similar to the subject property.  Without waiving and subject to the foregoing objections, Defendant Burl Barnett has worked in the stucco industry for approximately 50 years, and he has attended training relating to Sto products approximately 5 times.

(Doc. 141-1 at 53-54).

where follow-up is allowed, obfuscation and prevarication can be challenged, and the actual facts pursued and ferreted out. The plaintiffs did not fail to act diligently by pursuing depositions in lieu of further interrogatories.

Second, Sto argues that, because Parker used architects, house designers, engineers, and BMH in planning for the construction of his home, the information the plaintiffs say they obtained in deposition was actually known to them and/or these third parties since before ground was even broken, and that the plaintiffs' failure to follow up on this information reflects a lack of diligence and thus a lack of good cause. (Doc. 135 at 6-7). This opaque argument is completely unexplained and leaves the Court nothing to consider.

Third, Exterior points to the Magistrate Judge's denial of the plaintiffs' motion to extend the deadline for amending the pleadings as informing the Court's analysis of the issue. In particular, Exterior suggests the Magistrate Judge ruled that the plaintiffs' prior amendments to the complaint, as well as the parties' written discovery, were inconsistent with good cause. (Doc. 133 at 2). The Court cannot agree. As to prior amendments, the Magistrate Judge noted that the defendants mentioned them in their argument, but she herself did not rely on them. (Doc. 87 at 3-4). The Magistrate Judge acknowledged the parties' "extensive written discovery," but only as supporting application of the good cause standard of Rule 16(b)(4) rather than the more lenient standard of Rule 15 – not as a basis for finding no good cause. (*Id*. at 4). Indeed, the Magistrate Judge made no ruling that good cause was lacking but instead opted to postpone consideration of that issue until the plaintiffs filed a potential post-depositions motion for leave to amend the complaint. (*Id*. at 4-5). That moment is now here and, as discussed above, the parties' written discovery does not weigh against the existence of good cause.

Fourth, Sto, WCS, and Dittenber suggest that the plaintiffs should be stuck with the July 1 deadline because they (along with the defendants) requested it. (Doc. 135 at 2-3; Doc. 137 at 5-6). As noted, the good cause inquiry asks whether

8

the plaintiff, in the exercise of diligence, should have learned prior to the amendments deadline the information on which the proposed amendment is based; it does not ask whether the plaintiff was realistic in agreeing to the specific deadline imposed. The defendants offer no argument or authority to the contrary.

Fifth, Exterior and Sto complain that they would be prejudiced were the amendment allowed, because the deadlines for expert disclosures have passed and because too much discovery – including expert depositions and potentially re-opening the plaintiffs' depositions – would have to occur before the December 12 discovery deadline. (Doc. 133 at 5-6; Doc. 135 at 10-11). Prejudice to the non-movant is a consideration under Rule 15(a)(2), not Rule 16(a)(4),[9] and in order to justify denying an amendment, such prejudice must be "undue." *Blackburn v. Shire US Inc.*, 18 F.4th 1310, 1317 (11th Cir. 2021). The defendants do not assert that any prejudice to them is undue; on the contrary, they concede that any prejudice to them would vanish by the simple expedient of extending the relevant deadlines. (Doc. 133 at 6).[10]

The plaintiffs' motion for leave to amend has survived all of the defendants' across-the-board challenges to the existence of good cause.[11]

---

[9] *Payne v. C.R. Bard, Inc.*, 606 Fed. Appx. 940, 944 (11th Cir. 2015); *United States v. Crumb*, 2016 WL 5349459 at *2-3 (S.D. Ala. 2016).

[10] The defendants could scarcely complain about such an extension, since they requested later deadlines in the Rule 26(f) report than they received. (Doc. 36 at 11-13).

[11] As noted, the instant motion was filed on September 30. As also noted, the defendants' depositions apparently concluded in late August. (Doc. 142 at 12). The Eleventh Circuit has indicated that a delay of over a month in seeking amendment after learning the information on which the amendment rests is inconsistent with diligence and thus with good cause. *Southern Grouts*, 575 F.3d at 1242 ("Southern Grouts lacked diligence, at the very least, because it waited until August 5, 2008 to file a motion to amend its complaint with information that it had known over a month before …."). Because no defendant challenges the plaintiffs' motion as filed too long after the depositions on which it is based, the Court declines to consider whether the plaintiffs' delay following the depositions would be adequate grounds to deny their motion.

Accordingly, the motion is due to be granted to the extent the changes wrought by the proposed seventh amended complaint flow from information first obtained during the defendants' depositions. The defendants deny that all the proposed changes satisfy this criterion.[12]

The new allegations of the proposed seventh amended complaint that the defendants challenge as being based on matters previously known to the plaintiffs fall into two categories. In the first category are allegations inserted by the plaintiffs in response to, or in anticipation of, challenges to the adequacy of the sixth amended complaint. These proposed changes are improper, because the plaintiffs were obligated to adequately plead their existing causes of action initially and, for lack of diligence in raising such known matters earlier, they lack good cause for a tardy amendment to do so. *MidAmerica C2L*, 25 F.4th at 1335 ("The lack of diligence that precludes a finding of good cause [includes] a plaintiff who has full knowledge of the information with which it seeks to amend its complaint before the deadline passes.").

In the second category are allegations concerning facts that were known to the plaintiffs previously but that were not relevant to the plaintiffs' claims until information learned in the depositions made them so. These proposed changes are proper, because plaintiffs are not required to plead irrelevant facts simply because they are known. The Court considers in order the changes identified by the defendants that fall into each category.

In September 2022, the Court granted in part Dittenber's motion to dismiss. (Doc. 112). In particular, the Court dismissed Counts Seven and Eight as directed against Dittenber, which asserted claims of negligence and wantonness based on his behavior and statements in June and October 2019. The Court agreed with Dittenber's argument that the limitations period as to these claims began to run no

---

[12] In comparing the sixth amended complaint with the proposed seventh amended complaint, the Court has been greatly aided by the electronically generated comparison submitted by Exterior. (Doc. 133-1).

later than October 2019 and thus expired by October 2021, more than two years before the plaintiffs sued him in July 2022 – a proposition the plaintiffs did not dispute. (Doc. 112 at 8). The Court also agreed with Dittenber's arguments that the plaintiffs' claims were not rendered timely by relation back principles, both because the sixth amended complaint did not substitute Dittenber for WCS but named him as an additional defendant and because the plaintiffs' mistake was one of legal judgment, not identity. (*Id*. at 11-15).

In a transparent effort to resurrect their dismissed claims, the plaintiffs have inserted into Counts Seven and Eight of the proposed seventh amended complaint the statement that "Plaintiffs [sic] first notice of WCS and Dittenber's negligence [or wantonness] was in August 2020 as detailed above." (Doc. 121-1 at 24, 25). "[A]s detailed above" refers to lengthy new allegations that, in August 2020, the plaintiffs noticed stucco problems too high to stem from wicking, with investigation revealing that Exterior had ignored Sto details and industry standards during installation, which put the plaintiffs on notice that Dittenber's assurances in October 2019 had been negligent and/or wanton. (*Id*. at 10-11). The plaintiffs patently did not learn any of the newly alleged information from the August 2022 depositions; on the contrary, their own proposed pleading confirms they possessed this information in August 2020, and it was thus available for use when they filed the sixth amended complaint in July 2022.

Dittenber objects that the plaintiffs intend by these new allegations to "re-plea[d] claims against Dittenber that this Court explicitly dismissed." (Doc. 137 at 2). The plaintiffs admit they seek to "revive" these claims by "correct[ing] pleading omissions" in the sixth amended complaint regarding the statute of limitations. (Doc. 121 at 1).[13] Because the new allegations do not constitute

---

[13] The plaintiffs admit these allegations have no purpose other than to undo the Court's dismissal of the negligence and wantonness claims against Dittenber. (Doc. 143 at 9-10).

newly discovered information, the plaintiffs cannot demonstrate good cause for their failure to include these allegations in the sixth amended complaint so as to avoid a limitations defense otherwise appearing on the face of that pleading.[14]

The proposed seventh amended complaint adds three paragraphs addressing Parker's construction contract, a construction mortgage, a deed, a permanent mortgage, and a new residential construction agreement. (Doc. 121-1 at 1-2, 12). WCS and Dittenber challenge these allegations as patently within the plaintiffs' knowledge years before July 1, 2022, such that the plaintiffs cannot insert them now. (Doc. 137 at 8-9). The plaintiffs say the amendments should be allowed because they are intended "to demonstrate standing." (Doc. 143 at 9). Standing, however, is always part of a plaintiff's burden, so the plaintiffs cannot show good cause for failing to include, no later than the sixth amended complaint, information they had long possessed regarding their standing.

The proposed seventh amended complaint adds a Count Twelve against Sto for fraudulent misrepresentation and suppression. The claim is based on Sto's promotion on its website and elsewhere of an ICC-ES report concluding that the stucco system applied to Parker's home complies with relevant building codes if applied by approved applicators, even though Sto knows it has no approved applicators. (Doc. 121-1 at 12-13, 14-15, 29-31). WCS and Dittenber (but not Sto) argue the plaintiffs knew or should have known of the report some time ago, since it is accessible on Sto's website. (Doc. 137 at 9). Perhaps, but until the plaintiffs had evidence that Sto lacked approved applicators, the report on its own was irrelevant, and the plaintiffs were not required by diligence to allege an irrelevant fact. According to the plaintiffs, they first learned on August 30 that Sto does not approve applicators, (Doc. 142 at 12), and only at that time did the

---

[14] The plaintiffs did not, in opposing Dittenber's motion to dismiss, request permission to amend the sixth amended complaint (necessarily, after July 1) to correct any pleading deficiencies found by the Court. (Doc. 97). The Court therefore need not consider if a plaintiff may circumvent Rule 16(b)(4) by such a stratagem.

content of the report become relevant to this lawsuit.  It therefore may be alleged in the seventh amended complaint.

The proposed seventh amended complaint alleges several additional alleged misrepresentations by the defendants.  Without identifying any of them specifically, Exterior complains that these representations necessarily were known to the plaintiffs when they were made and so "could have been asserted in previous iterations" of the complaint.  (Doc. 133 at 4).  But there is a world of difference between knowing a statement was made and knowing the statement was false.  Again, the plaintiffs were not required to plead the making of representations before having evidence the representations were false, and according to the plaintiffs, the falsity of the representations was discovered only in the August depositions.  (Doc. 142 at 8).

The defendants identify no other allegation of the proposed seventh amended complaint as improper.  Instead, they describe the pleading as a monstrosity in which 87 of its 144 paragraphs are either new or altered, (Doc. 135 at 10), such that the Court cannot expect the defendants to make specific objections but should instead penalize the plaintiffs for not identifying line by line which additions and alterations could not have been made prior to the defendants' depositions.  (Doc. 137 at 7).

First, a reality check.  Included in those 87 paragraphs are dozens that do nothing more than tweak the parties' names (for example, "Parker" becomes "Mr. Parker," "Barnett and ERI" becomes "Barnett/ERI"), tweak other language (for example, "property" becomes "home," "water-proof" becomes "waterproof"), delete references to Capitol (which has been dismissed by agreement), and make similarly inconsequential changes.  Even paragraphs that are heavily highlighted by Exterior as altered actually contain only miniscule changes.[15]  The plaintiffs

---

[15] For example, Exterior's version highlights a continuous 5+ lines of proposed paragraph 108 as altered, yet a comparison with the sixth amended complaint shows that

represented, subject to Rule 11, that "the new allegations conform to the deposition testimony and associated exhibits." (Doc. 121 at 1). That suffices to pass the burden to the defendants – who were at their depositions and know as well as anyone what information came out in that forum – to identify new allegations they believe are not based on new information. Exaggerating the difficulty of this exercise – which three sets of counsel could share – does not relieve them of their burden.

Finally, Sto argues that the seventh amended complaint should not eliminate the sixth amended complaint's allegations against Capitol because the remaining defendants would be prejudiced in the exercise of their right to elect whether to inform the jury of Capitol's settlement or to choose a post-judgment setoff by the Court. (Doc. 135 at 9). "Plaintiffs agree, and see no need to further address this argument." (Doc. 142 at 9). The Court construes the plaintiffs' response as agreeing to reinstate the sixth amended complaint's allegations against Capitol.

## CONCLUSION

The plaintiffs' motion for leave to file a seventh amended complaint is **granted in part**. The plaintiffs are granted leave to file their proposed seventh amended complaint, (Doc. 121-1), with the following changes: (1) paragraphs 2, 4, 47, 48, 52, 109, and 113 must be deleted; and (2) all allegations of the sixth amended complaint against Capitol must be reinserted. The plaintiffs' motion to file a seventh amended complaint without these changes is **denied**.

The plaintiffs are **ordered** to distribute the revised seventh amended complaint to the defendants on or before **November 3, 2022**. The parties are

---

the only actual changes were: "WCS/Dittenber" became "WCS and Dittenber"; "PARKER became MR. PARKER"; "PARKER's Property" became "MR. PARKER' [sic] Home"; "he was" became "they were"; and "to otherwise act" became "by otherwise acting." (*Compare* Doc. 73 at 17 *with* Doc. 123-1 at 24).

thereafter **ordered** to resolve informally any dispute concerning whether the plaintiffs' revised seventh amended complaint complies with this order.  The plaintiffs are **ordered** to file and serve the seventh amended complaint on or before **November 10, 2022**.

The parties remain free to seek by motion an amended scheduling order in light of this order.

DONE and ORDERED this 27th day of October, 2022.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE
