# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JOHN H. PARKER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 21-0425-WS-B |
| | ) |
| EXTERIOR RESTORATIONS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the motion of plaintiff and counterclaim defendant Bryan Maisel Homes, LLC ("BMH") to dismiss the counterclaim for common-law indemnity asserted against it by defendant and counterclaim plaintiff Terry Dittenber. (Doc. 155). Dittenber has filed a response and BMH a reply, (Docs. 172, 177), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion to dismiss is due to be granted.

## BACKGROUND

As recounted in previous Court orders, this action centers around stucco materials applied to the residence of the individual plaintiff ("Parker"). BMH was the general contractor on the project. Defendants include the exterior contractor and its representative (collectively, "Exterior"), the stucco manufacturer ("Sto"), Dittenber, and the entity of which he is the sole member ("WCS").[1]

The seventh amended complaint, (Doc. 174), asserts thirteen causes of action. Dittenber is a defendant as to four of them: Count V (breach of warranty);

---

[1] The retailer of the stucco ("Capitol") has been dismissed as a defendant.

Count VII (negligence); Count IX (fraudulent misrepresentation and suppression); and Count XI (fraudulent misrepresentation and suppression).  (*Id*. at 19-28).[2]

The allegations underlying these claims may be summarized as follows. Dittenber in 2018 executed a sales representative agreement with Sto.  By July 2019, the plaintiffs were concerned that either the stucco was defective or that it was not being installed properly, and they insisted on a site visit by an authorized Sto representative to inspect the product and its installation.  In July 2019, Dittenber sent an email to Exterior stating he had made an observation visit to the project, that it appeared to be a standard stucco system, that nothing appeared out of sorts, that it was a typical stucco application, and that upon completion Sto would issue a standard materials warranty.  Dittenber did not actually visit Parker's home at all.  In October 2019, Dittenber met with the plaintiffs and others at the home and held himself out as an authorized representative of Sto with knowledge of Sto products and correct application processes.  Dittenber knew the plaintiffs were concerned about installation methods and the appearance of the stucco finish but expressed no concerns regarding the application or performance of the Sto product.  Post-visit, Dittenber sent Exterior an email stating that, although the selected finish does not hide slight imperfections, the performance of the materials is not affected and a materials warranty will be issued upon completion. (Doc. 174 at 2, 6-9).

On motion to dismiss, the Court dismissed most of Count V as against Dittenber.  The only portion of the warranty claim remaining as against Dittenber is the allegation that, if Sto did not issue a materials warranty, and if Dittenber had no authority to represent that Sto would do so, then Dittenber fraudulently

---

[2] The sixth amended complaint named Dittenber as a defendant to Count VIII, which asserts a claim for wantonness.  (Doc. 73 at 18).  However, the seventh amended complaint does not name Dittenber as a defendant to Count VIII.  (Doc. 172 at 24-25). Because "an amended complaint supersedes the initial complaint and becomes the operative pleading in the case," *Lowery v. Alabama Power Co*., 483 F.3d 1184, 1219 (11th Cir. 2007), Dittenber is no longer a defendant as to the wantonness claim.

misrepresented that Sto would issue a warranty, such that he should be precluded by principles of estoppel and detrimental reliance from denying the existence of warranty obligations owed by him or WCS. (Doc. 112 at 4-5, 15; Doc. 174 at 19-21).

Count VII alleges that Dittenber negligently breached duties to the plaintiffs by failing to conduct a proper and detailed inspection of the home, by failing to communicate with Sto about the plaintiffs' complaints concerning the stucco and its application, and by failing to otherwise act reasonably as a sales representative and inspector. (Doc. 174 at 23).

Count IX alleges that Dittenber falsely stated he had visited the property in July 2019 and represented that the application was typical, that the Sto products were performing properly, and that Sto would issue its warranty upon completion. Dittenber in July and October 2019 thereby negligently misrepresented that there was nothing wrong with the product or the work performed by Exterior and suppressed that the product and/or work was defective. (Doc. 174 at 25-26).

Count XI alleges that, in the event it is determined that Sto is not bound by Dittenber's representations, Dittenber knew his capacity to speak for Sto was limited but by his conduct and actions misrepresented and suppressed his true status, skills, capabilities and authority. (Doc. 174 at 28).

In his counterclaim, Dittenber alleges that BMH owed certain duties to Parker, which he breached in various listed ways. (Doc. 132 at 35-39). Dittenber claims that any fault of his "was passive, secondary, or constructive to the proximate, active, actual, and primary fault of BMH," such that "BMH should be required to indemnify Dittenber for any award rendered in favor of Parker." (*Id*. at 40).

## DISCUSSION

The parties agree that the relevant law of common-law indemnity is that of Alabama. (Doc. 172 at 6; Doc. 177 at 1). "It is well settled that, under Alabama

law, joint tortfeasors are not entitled to contributions [sic] from one another and that, subject to limited exceptions …, joint tortfeasors are not entitled to indemnity from one another." *Ex parte Stenum Hospital*, 81 So. 3d 314, 318 (Ala. 2011). "Some exceptions to the rule that indemnity will not be allowed among joint wrongdoers are that a joint wrongdoer may claim indemnity where he has not been guilty of any fault, except technically or constructively, or where both parties are at fault, but the fault of the party from whom indemnity is claimed was the proximate or primary cause of the injury." *J.C. Bradford and Co. v. Calhoun*, 612 So. 2d 396, 398 (Ala. 1992) (internal quotes omitted). "The active-versus-passive-negligence analysis … is a well-established exception to the rule that joint tortfeasors may not claim indemnity against each other." *SouthTrust Bank v. Jones, Morrison, Womack & Dearing, P.C.*, 939 So. 2d 885, 902-03 (Ala. Civ. App. 2005). On the other hand, "where joint tortfeasors are equally at fault, i.e. where each is chargeable with active or affirmative negligence contributing to the injury, for which recovery was had, neither is entitled to indemnity from the other …." *Sherman Concrete Pipe Machinery, Inc. v. Gadsden Concrete & Metal Pipe Co.*, 335 So. 2d 125, 127 (Ala. 1976).

All four causes of action asserted against Dittenber are based in tort. Even the warranty-by-estoppel claim depends on the allegation that Dittenber fraudulently misrepresented that Sto would issue a warranty. Dittenber does not disagree with this assessment. Dittenber describes the wrongdoing he ascribes to BMH as "general common law tort violations," as well as breach of contract, warranty, and statutory duties. (Doc. 172 at 17). The joint tortfeasor/joint wrongdoer rules described above are thus in play.

Dittenber argues he is accused of merely passive negligence, because all he did was fail to discern defects in the stucco or its application. (Doc. 172 at 21-

22).[3] Passive negligence, however, for purposes of indemnity among joint tortfeasors, does not extend broadly to any failure to act or succeed. On the contrary, passive negligence in this context is roughly equivalent to vicarious liability, as for example a principal's liability for the torts of its agent. *SouthTrust Bank*, 939 So. 2d at 902-03; *Driver v. W.E. Pegues, Inc.*, 2012 WL 13020156 at *1 (N.D. Ala. 2012). If a jury finds Dittenber liable to Parker for negligently "failing to conduct a proper and detailed inspection," as the seventh amended complaint alleges, (Doc. 174 at 23), it will have found him liable based on his own negligent conduct, not based on his relationship to some other person or entity.[4] Dittenber's liability will thus be based on his active negligence for purposes of common-law indemnity analysis.

Dittenber says his proposed application of the active/passive dichotomy is consistent with *Mallory S.S. Co. v. Druhan*, 84 So. 874 (Ala. Ct. App. 1920), and *Coates v. CTB, Inc.*, 173 F. Supp. 2d 1200 (M.D. Ala. 2001). (Doc. 172 at 21-22). In *Mallory*, the plaintiff was performing stevedoring services for the defendant steamship company when his servant was injured by defective equipment supplied by the defendant. The plaintiff's insurer compensated the injured worker and sought indemnity from the defendant. 84 So. at 876. The Court allowed indemnity, ruling that, while the plaintiff had a duty to refrain from using defective appliances supplied by the defendant, its "negligence in failing to inspect [the equipment] is only passive; that of the one furnishing the appliance is active."

---

[3] Dittenber does not suggest that his alleged misrepresentations and suppressions under Counts V, IX, and XI, or any other of his additional allegedly negligent conduct under Count VII, could be considered merely passive for indemnity purposes.

[4] As Dittenber recognizes, (Doc. 172 at 7), there can be no right to indemnity absent a judgment against the indemnitee, and such a judgment must necessarily be based on the claims asserted against the indemnitee in the relevant pleading. Dittenber insists that the Court on motion to dismiss must credit the allegation of his counterclaim that his failure to discover defects in the stucco and/or its application was "innocent," (Doc. 172 at 12), but if the Court does so, there is no possibility of a verdict against him and thus no possible indemnity counterclaim.

*Id*. at 877. In *Coates*, the plaintiff sued the defendant for its faulty construction of a leaky chicken house. The defendant sought common-law indemnity from the manufacturer of the nails and nail guns it had used, alleging they were defective and caused the leaks. 173 F. Supp. 2d at 1201-02. The Court, relying on *Mallory*, ruled that the defendant "could be found to be merely passively liable, in that it negligently failed to determine independently whether those items were properly used for the construction, while [the manufacturer] could be actively negligent by supplying improper items to" the defendant. *Id*. at 1203.

While it appears that the *Mallory* application of the active/passive dichotomy may be more expansive than that recognized in *SouthTrust*, and while both *Mallory* and *Coates* involve inspections, they do not stretch the concept of passive negligence so far as to support Dittenber's claim for indemnity. The indemnitees in these cases failed to inspect (or inspect adequately) materials they themselves acquired and used. Dittenber, in contrast, was engaged for the specific purpose of providing to others (the plaintiffs) an inspection to determine the adequacy of the building materials and their application. It cannot easily be imagined that one engaged for the precise purpose of performing an inspection of another's property for the benefit of the other is insulated from ultimate financial responsibility for his negligent failure to discover what he was engaged to discover. By Dittenber's logic, a home inspector who negligently failed to find a defect would be entitled to indemnity from the contractor that created the defect, and a forensic accountant who negligently failed to uncover an irregularity would be entitled to indemnity from the bookkeeper that made the error. Because Dittenber offers no authority or argument in any way suggesting that common-law indemnity under Alabama law offers blanket protection to inspectors engaged to inspect the property of another, the Court rejects Dittenber's argument.

The counterclaim alleges that Dittenber's fault, if any, is merely constructive. (Doc. 132 at 40). Dittenber does not in brief attempt to defend his indemnity claim on this basis, and any such argument would fail. Technical or

constructive fault has been equated with attenuated fault along the lines of vicarious liability. *SouthTrust Bank*, 939 So. 2d at 903. "We do not deem the failure of a guardian to apprise himself of his legal responsibilities with regard to investing a guardianship estate to be within the realm of 'technical fault' or 'constructive fault.'" *J.C. Bradford*, 612 So. 2d at 398. Similarly, Dittenber's allegedly negligent performance of an inspection, and his various alleged misrepresentations and suppressions, cannot be considered to be mere technical or constructive faults.

The counterclaim does not specifically allege that BMH's fault was the proximate or primary cause of Parker's injury. It does, however, allege that BMH's fault was "proximate, active, actual, and primary," (Doc. 132 at 40), and BMH understands Dittenber to assert that BMH "was the proximate cause of Parker's injuries." (Doc. 177 at 4). The Court therefore considers whether the counterclaim states a viable claim for common-law indemnity based on causation precepts despite Dittenber's failure to make any argument along these lines.

The causation angle of common-law indemnity stems from *Mallory*, which stated that indemnity is available when, although both parties are at fault, the fault of the indemnitor "was the efficient cause of the injury." 84 So. at 369. The Alabama Supreme Court later rephrased the test as whether the indemnitor's fault "was the proximate or primary cause of the injury." *Crigler v. Salac*, 438 So. 2d 1375, 1385 (Ala. 1983). It is clear that "proximate … cause" as used in *Crigler* does not carry its ordinary meaning of "an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred." *Lemley v. Wilson*, 178 So. 3d 834, 842 (Ala. 2015) (internal quotes omitted).[5] In *Crigler*, the

---

[5] An "efficient cause" is defined essentially as a proximate cause. Black's Law Dictionary 592 (9th ed. 2009); *see also Nance v. Southerland*, 79 So. 3d 612, 624 (Ala. Civ. App. 2010) ("The proximate cause of an injury is the direct and immediate, efficient cause of the injury.") (internal quotes omitted).

7

indemnitee "participated with" the indemnitor in the conversion, which would satisfy the *Lemley* definition of proximate cause, yet the *Crigler* Court ruled that this fact pattern did not satisfy the proximate-cause test for common-law indemnity.  438 So. 2d at 1386.

*Crigler*, then, does not establish two different and independently sufficient causation standards supporting common-law indemnity:  a lower standard of proximate cause and a higher standard of primary cause.  Rather, *Crigler* used the term "primary" to qualify or define the term "proximate" in this context.  To support common-law indemnity, the indemnitor's fault must be the "primary" cause of the plaintiff's injury.  That standard is not met when the active wrongdoing of the indemnitee "contribut[es] to the injury."  *Sherman Concrete Pipe Machinery*, 335 So. 2d at 127.

According to the seventh amended complaint, Dittenber's negligent inspections and related activity; his misrepresentations and suppressions regarding those inspections, the adequacy of the product and installation; and his misrepresentations and suppressions regarding his authority to speak for Sto, each caused Parker to allow Exterior to continue the project, purchasing more defective stucco and improperly installing it, leading to further damage to the house.  (Doc. 174 at 8-9).  If the jury finds for Parker and against Dittenber, it will necessarily find that Dittenber's wrongdoing contributed to Parker's damages.  Even if the jury also were to find that BMH owed and breached the duties the counterclaim alleges, (Doc. 132 at 35-39), BMH's fault would not be the primary cause of Parker's damages but only a contributing cause, along with Dittenber's, as in *Crigler*.

Except as addressed above, Dittenber ignores the Alabama cases setting forth the state's rules governing common-law indemnity.  Instead, Dittenber focuses on the Restatement (Second) of Torts' formulations.  He justifies this with the assertion that "Alabama courts have looked to § 886B … for the application of common law indemnity." (Doc. 172 at 8).  His primary authority for this

8

proposition is *Amerada Hess Corp. v. Owens-Corning Fiberglass Corp.*, 627 So. 2d 367 (Ala. 1993). The only statement from Section 886B on which the *Amerada Hess* Court relied, however, is the banal one that "[t]he basis for indemnity is restitution, and the concept that one person is unjustly enriched at the expense of another when the other discharges liability that it should be his responsibility to pay." *Id*. at 370 (internal quotes omitted).[6] That statement may explain why common-law indemnity exists, but it does not identify when one is "unjustly enriched" or when "it should be his responsibility to pay." Neither *Amerada Hess* nor any other known Alabama case adopts Section 886B or any portion of it as defining the scope of common-law indemnity under Alabama law.[7]

This would end the Court's consideration of the Restatement but for one thing: BMH itself addresses Section 886B in its principal brief, arguing not that it fails to represent Alabama law as it is (or as the Alabama Supreme Court would now decide it) but that Dittenber cannot satisfy its one example of a situation justifying common-law indemnity on which the counterclaim appears to rely.

---

[6] The *Amerada Hess* Court rejected indemnity because the would-be indemnitees had not discharged any liability, and the would-be indemnitor had not been unjustly enriched by the would-be indemnitees. 627 So. 2d at 370.

The *Amerada Hess* Court also quoted without comment from Section 886B as follows: "[t]he unexpressed premise has been that indemnity should be granted in any factual situation in which, as between the parties themselves, it is just and fair that the indemnitor should bear the total responsibility, rather than to leave it on the indemnitee …." 627 So. 2d at 370 (internal quotes omitted). The Alabama Supreme Court neither adopted this statement as Alabama law nor applied it to the case before it.

[7] *See Precision Gear Co. v. Continental Motors, Inc*., 135 So. 3d 953, 957 (Ala. 2013) (relying on the same quote from Section 886B to support the proposition that common-law indemnity is a tort under Alabama law); *North Alabama Electric Cooperative v. New Hope Telephone Cooperative*, 7 So. 3d 342, 345 (Ala. 2008) (relying on the same quote from Section 886B to support the proposition that common-law indemnity and contractual indemnity are intertwined claims); *American Commercial Barge Line Co. v. Roush*, 793 So. 2d 726, 729 (Ala. 2000) (relying on the same quote from Section 886B in a case governed by maritime law).

(Doc. 155 at 9-10). The Court therefore considers whether Dittenber can satisfy this example.

"Instances in which indemnity is granted under this principle [quoted in *Amerada Hess*, *supra*] include the following: … (d) The indemnitor supplied a defective chattel or performed defective work upon land or buildings as a result of which both were liable to a third person, and the indemnitee innocently or negligently failed to discover the defect." Restatement (Second) of Torts § 886B(2)(d). Dittenber confirms that he is relying on this proposition. (Doc. 172 at 10).[8] His problem is the same as under Alabama decisional law: his inability to support the improbable proposition that an outsider engaged for the specific purpose of discovering defects in another's property is entitled to indemnity when he negligently fails to do what he was engaged to do. Dittenber offers no authority and no argument in support of this proposition, and the single example in the comments to Section 886B(2)(d) involves a failure to discover by the owner of the property, not by an outsider engaged by the owner to discover defects.

Dittenber asks the Court to consider other possible bases of common-law indemnity suggested by Section 886B. First, he points to comment k, which states that indemnity "has sometimes been sought" when "the two parties are guilty of different types of tortious conduct" (identified as negligence versus intent, recklessness, or gross negligence) or "are held to different standards of care" (identified as reasonable care versus strict liability). (Doc. 172 at 13, 20). Second, he argues (repeatedly) that it should be left to a jury to determine whether it is "just and fair" that BMH bear total responsibility for any judgment against him. (*Id*. at 3, 9, 10, 13, 21). Because Dittenber has not demonstrated that the Alabama

---

[8] Again, Dittenber's argument does not impact Parker's claims of misrepresentation and suppression, or his claims of negligence in other particulars.

Supreme Court has adopted these statements as Alabama law[9] or would do so if asked,[10] and because BMH has not rescued Dittenber by conceding the point, they cannot sustain his counterclaim.

## CONCLUSION

For the reasons set forth above, BMH's motion to dismiss is **granted**. Dittenber's counterclaim for common-law indemnity is **dismissed**.

DONE and ORDERED this 21st day of November, 2022.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[9] Dittenber's suggestion to the contrary notwithstanding, (Doc. 172 at 9), the *Amerada Hess* Court did not adopt a vague "just and fair" standard for common-law indemnity and leave it to individual courts to interpret that phrase as they see fit. *See* note 5, *supra*.

[10] Section 886B is no longer current, having been superseded by Section 22 of the Restatement (Third) of Torts in 1999. Frank J. Vandall, *A Critique of the Restatement (Third), Apportionment as It Affects Joint and Several Liability*, 49 Emory L.J. 565, 565 (2000). Section 22 and its comments eliminate all the language on which Dittenber relies, leaving no basis for predicting the Alabama Supreme Court would adopt these long-extinct provisions.