# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JOHN H. PARKER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 21-0425-WS-B |
| | ) |
| EXTERIOR RESTORATIONS, INC., et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on a motion to dismiss filed by defendant Sto Corp. ("Sto"), (Doc. 185), and on a motion to dismiss in part filed by defendants Wall and Ceiling Solutions, LLC ("WCS") and Terry Dittenber. (Doc. 186). The parties have filed briefs in support of their respective positions, (Docs. 185-86, 196, 201-02), and the motions are ripe for resolution. After careful consideration, the Court concludes that Sto's motion is due to be granted in part and denied in part and that the motion of WCS and Dittenber is due to be granted.

## BACKGROUND

Familiarity with the factual and legal background of this action is assumed. The counts of the seventh amended complaint, (Doc. 174), relevant to the pending motions are:

- Count V     breach of warranty
- Count VI    Alabama Extended Manufacturer's Liability Doctrine ("AEMLD")
- Count VII   negligence
- Count VIII  wantonness
- Count IX    fraud/suppression

- Count XII fraud/suppression

These are the only counts as to which Sto is a defendant, and it seeks dismissal of all of them. WCS and Dittenber are defendants under multiple counts, but they seek dismissal only of Count XII.

## DISCUSSION

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). The Court applies the same rule to motions to dismiss and accordingly limits its review to those arguments the parties have expressly advanced.

"District courts, including this one, ordinarily do not consider arguments raised for the first time on reply." *Arnold v. State Farm Fire and Casualty Co.*, 268 F. Supp. 3d 1297, 1303 (S.D. Ala. 2017); *accord Scott v. ILA Local 140 International Longshoremen's Association*, 449 F. Supp. 3d 1270, 1273 (S.D. Ala. 2020). Unless the offending party articulates an adequate reason for its failure to present in its principal brief an argument then available to it, the Court will not grant relief based on arguments first raised in reply. *See, e.g., id.* at 1273-74 (declining to consider an argument first raised in a reply brief, despite the defendant's assertion that it did not understand the scope of the complaint, because its scope was plain from the face of the pleading).[1]

### A. Breach of Warranty.

Count V alleges breach of both express and implied warranties. The Court addresses them separately.

---

[1] The parties are fully aware of this rule, as the Court has already invoked it twice in this litigation. (Doc. 112 at 9-10; Doc. 140 at 5).

**1. Express warranty.**

The seventh amended complaint alleges that Sto manufactured the stucco that was applied to Parker's house. It also alleges that Dittenber, either once or twice, visited the property and purported to inspect the stucco and its application. The seventh amended complaint continues that Dittenber, with Sto's awareness, held himself out to the plaintiffs as having authority to make assurances regarding Sto's warranty and that he twice promised the plaintiffs that Sto would issue its standard materials warranty "upon completion." (Doc. 174 at 7-9, 14, 19-20).

Sto points out that Count V alleges that "[n]o warranty has been issued by Sto," (Doc. 174 at 20), and it argues that this statement negates the existence of an express warranty and thus a breach of express warranty. (Doc. 185 at 3). The plaintiffs respond that they have merely engaged in permissible alternative pleading,[2] hedging their bets as to whether Dittenber had authority to bind Sto to its standard materials warranty (in which case the plaintiffs seek to hold Sto liable for breach) or did not (in which case the plaintiffs seek to hold Dittenber and WCS to a warranty by estoppel). (Doc. 196 at 14-15). Count V plainly uses the language of alternatives,[3] and Sto in its reply makes no effort to counter the plaintiffs' construction of their pleading or of governing law.

The parties are vague as to what constitutes "issu[ance]" of an express warranty. Sto insists the plaintiffs "did not *receive*" an express warranty, (Doc.

---

[2] "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically …." Fed. R. Civ. P. 8(d)(2). "A party may state as many separate claims or defenses as it has, regardless of consistency." *Id*. Rule 8(d)(3).

[3] "*Should* the Court find that Sto did not issue a warranty and that Dittenber and WCS had no authority to represent that it would, [*then*] Dittenber should be precluded from denying the existence of any warranty obligations owed by him or WCS by principles of estoppel and detrimental reliance." (Doc. 174 at 20 (emphasis added)). "*Alternatively*, *if* Sto … did not issue a warranty on the Sto stucco materials, [*then*] Dittenber and WCS are estopped from denying their own obligations to warrant the Sto stucco materials in light of their fraudulent misrepresentations that Sto would issue a warranty." (*Id*. at 21 (emphasis added)).

3

185 at 3 (emphasis added)), language suggesting it believes such a warranty can be issued only by delivery of a paper or electronic document. Sto offers no authority for the proposition that an express warranty cannot arise by other means, including by promise of the seller or its agent that such a warranty will issue, and the Court will not supply the deficiency.

In its reply brief, Sto argues that there could be no warranty arising from Dittenber's alleged promise because, by its terms, the warranty was contingent upon the stucco subcontractor ("Exterior") completing the project, and the seventh amended complaint alleges that Exterior was fired before finishing. (Doc. 202 at 4). When it filed its principal brief, Sto was perfectly aware that the seventh amended complaint pegs Sto's liability for breach of express warranty to Dittenber's representations, (Doc. 185 at 3), and it fails to explain why it nevertheless failed to assert this challenge to the plaintiffs' theory until its reply brief. Sto's belated argument therefore cannot form the basis of relief.

In any event, the written messages from Dittenber on which the plaintiffs rely do not state that the warranty will issue only if the project is completed by Exterior. The first states that "[u]pon completion Sto will issue our Standard Materials Warranty." (Doc. 174 at 7). The message does not say that the warranty will issue upon completion *by Exterior* but simply "upon completion." Similarly, the second message says only that "a Materials Warranty will be issued upon completion," without any reference to completion by a particular applicator. (*Id*. at 9). Sto is free to attempt to prove that the messages incorporate a requirement that Exterior be the one to finish the project, but on motion to dismiss its preferred construction cannot be credited.[4]

---

[4] Sto appears to believe that, because Exterior was fired, "the project was never completed," (Doc. 202 at 4), but that is plainly a legally inadequate *non sequitur*, as the project could have been completed by others. The seventh amended complaint suggests that this occurred, since it alleges that a certificate of occupancy was issued in March 2020. (Doc. 174 at 10).

**2. Implied warranty.**

Count V alleges that Sto, as manufacturer of the stucco, warranted that the stucco was "merchantable" and "fit for the ordinary purposes for which it was intended." (Doc. 174 at 19, 20). Count V therefore implicates an implied warranty of merchantability. *See* Ala. Code § 7-2-314 (an implied warranty that goods are merchantable requires that the goods be "fit for the ordinary purposes for which such goods are used").

Sto offers two arguments against the plaintiffs' implied warranty claim: (1) Sto is not a "seller" under Alabama's version of the UCC; and (2) stucco, once applied to a home, is no longer a "good" to which an implied warranty may run. (Doc. 185 at 4). The Court considers these arguments in turn.

**i. "Seller."**

Under the UCC, "'Seller' means a person who sells or contracts to sell goods." Ala. Code § 7-2-103(1)(d). Sto admits that it sells stucco, and it admits that the stucco products it sells are goods when it sells them. (Doc. 185 at 4). Sto nevertheless asserts that it "is a *manufacturer* rather than a seller or retailer of goods." (*Id*. (emphasis in original)). A manufacturer, however, is a seller under Section 7-2-103(1)(d), since it meets that straightforward definition. "By its terms, a seller is anyone who sells, *including a manufacturer* or distributor." *Bishop v. Faroy Sales*, 336 So. 2d 1340, 1343 (Ala. 1976) (emphasis added).[5]

Only a merchant can provide an implied warranty of merchantability. Ala. Code § 7-2-314. A "merchant" includes "a person who deals in goods of the kind"

---

[5] Its argument is not a model of clarity, but Sto appears to have been led astray by statements in some Alabama opinions seeming to use "seller" as an unfortunate shorthand for "retailer" or "immediate seller" in addressing implied warranties. *See Ex parte General Motors Corp.*, 769 So. 2d 903, 910 (Ala. 1999); *Rhodes v. General Motors Corp.*, 621 So. 2d 945, 947 (Ala. 1993); *Wellcraft Marine v. Zarzour*, 577 So. 2d 414, 419 (Ala. 1990). None of these cases even acknowledge *Bishop*, much less purport to overrule it.

at issue. *Id*. § 7-2-104(1). The seventh amended complaint, with its descriptions of the expanse of Sto's distribution and support network, plainly alleges that Sto is a merchant within this definition, and Sto does not effectively deny that it meets the definition. Sto is therefore capable of issuing an implied warranty of merchantability.

Because Sto is alleged to be a merchant, "a warranty that the goods shall be merchantable is implied in a contract for their sale," subject only to exclusion or modification. Ala. Code § 7-2-314. Sto neither asserts the existence of such an exclusion or modification nor argues that the seventh amended complaint fails to adequately allege their non-existence (assuming without deciding that Rule 8 places any such pleading burden on the plaintiffs). Thus, under the seventh amended complaint, a warranty of merchantability arose upon Sto's sale of the subject stucco.

Sto's argument morphs from denying it is a seller to denying it is in privity with the plaintiffs. (Doc. 185 at 4). This is important, because "[a] sellers' [sic] warranty, whether express or implied, extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." Ala. Code § 7-2-318. The parties agree that this provision prevents the plaintiffs from seeking economic damages for breach of implied warranty. (Doc. 185 at 4; Doc. 196 at 11).

However, because "[a] manufacturer … intends the products he sells to eventually arrive in the hands of consumers[, its] warranty would extend to the final buyer-consumer of the product … if he is injured in person by the breach of the warranty." *Bishop*, 336 So. 2d at 1343. Count V's *ad damnum* clause seeks recovery for home damages, incidental and consequential damages, and (with respect to Parker) for mental anguish/emotional distress. (Doc. 174 at 21). The plaintiffs assert that mental anguish constitutes "injur[y] in person" for purposes of

6

Section 7-2-318, (Doc. 196 at 12), and Sto does not challenge the plaintiffs on this point.

Instead, Sto argues in its reply brief that *Bishop* is no longer good law following *Ex parte General Motors Corp.*, 769 So. 2d 903 (Ala. 1999). (Doc. 202 at 2). When it filed its principal brief, Sto knew that Count V seeks recovery for mental anguish, and it was on notice that Section 7-2-318 eliminates the privity requirement for personal injury, yet Sto nevertheless confined its privity argument to "property damage" and "direct economic loss." (Doc. 185 at 4). Because Sto has provided no good reason for its failure to address mental anguish or personal injury in its principal brief, the argument comes too late.

Even were the Court to consider Sto's tardy argument, it would fail on its merits. It is true that the plaintiff in *Ex parte General Motors* alleged "physical injuries" as well as property damage, 769 So. 2d at 905, and it is also true that the Court stated both that "implied warranties are applicable only to sellers" and that "a summary judgment would [thus] be proper as to any such claim." *Id*. at 910. However, the Court's rejection of an implied warranty claim was dicta, since the Court concluded that the complaint "d[id] not charge GM with the breach of any implied warranty" to begin with. *Id*. at 911. Moreover, the Alabama Supreme Court has continued to recognize that privity is not required in order to enforce an implied warranty resulting in personal injury. *E.g., Rampey v. Novartis Consumer Health, Inc.*, 867 So. 2d 1079, 1089 (Ala. 2003). The Court therefore agrees with those sister courts concluding that *Ex parte General Motors* does not alter *sub silentio* either the clear language of Sections 7-2-103(1)(d) and 7-2-318 or *Bishop*'s construction of these provisions.[6]

---

[6] *See Harman v. Taurus International Manufacturing, Inc.*, 586 F. Supp. 3d 1155, 1162-63 (M.D. Ala. 2022) (Marks, C.J.); *Ballard v. General Motors, LLC*, 572 F. Supp. 3d 1154, 1158-60 (M.D. Ala. 2021) (Watkins, J.); *Avery v. Cobra Enterprises, Inc.*, 2013 WL 2352320 at *3 (N.D. Ala. 2013) (Acker, J.); *Sullivan v. Lowes Home Centers, Inc.*, 2009 WL 10703683 at *1-2 (N.D. Ala. 2009) (Blackburn, J.). The Court respectfully

### ii. "Good."

"'Goods' means all things … which are movable at the time of their identification to the contract for sale …." Ala. Code § 7-2-105(1). Sto does not deny that its stucco constituted a "good" at some point. Instead, Sto argues in a single sentence that, "upon its installation, stucco is no longer considered a 'good' under Alabama law." (Doc. 185 at 4). For this proposition, Sto relies on *Keck v. Dryvit Systems, Inc.*, 830 So. 2d 1 (Ala. 2002).

In *Keck*, the plaintiffs purchased an existing home, which was clad with an exterior insulation finishing system ("EIFS") that allowed water intrusion. 830 So. 2d at 3. In upholding summary judgment on the plaintiffs' implied warranty claim, the Alabama Supreme Court ruled that, "[o]nce incorporated into realty, the EIFS loses its distinct characteristic as a 'good' and becomes an integral part of the structure of a home." *Id*. at 8.

The plaintiffs do not suggest that the stucco at issue in this case differs materially from the EIFS at issue in *Keck*. Instead, they argue that the result in *Keck* depended on the status of the EIFS at the time of the relevant contract. In *Keck*, they say, the relevant contract was the plaintiffs' purchase of the home, since before that time they had no connection with the EIFS. Because they were not the original owners, by the time the *Keck* plaintiffs acquired the property, the EIFS had already been applied; thus, the EIFS was never a good with respect to them. In contrast, the plaintiffs say, the relevant contract in this case is the contract for sale of the stucco, and the stucco became identified to that contract no later than upon its delivery to the job site, which necessarily occurred prior to application. Thus, the plaintiffs conclude, the stucco began as a good vis-à-vis

---

disagrees with those sister courts that have reached a different conclusion. *See Rose v. General Motors Corp.*, 323 F. Supp. 2d 1244, 1247-48 (N.D. Ala. 2004) (Guin, J.); *McPherson v. General Motors Corp.*, 2007 WL 9717657 at *6 (S.D. Ala. 2007) (DuBose, J.).

them, and it therefore remained a good vis-à-vis them following its application as cladding.  (Doc. 196 at 12-14).

Sto replies that *Keck* "made little mention" of the fact that the plaintiffs had purchased an existing home.  (Doc. 202 at 3).  Actually, the Court made *no* mention of this fact, even though it relied on this circumstance in resolving the plaintiffs' negligence and fraud claims.  830 So. 2d at 9, 11.  On the other hand, neither did the *Keck* Court say that an implied warranty, once it arises in favor of the purchaser of a good (as *Keck* effectively concedes occurred with respect to the EIFS prior to its application), can simply wink out of existence as to that purchaser, much less that the very act of *using* the good (which is generally the point of acquiring it) eliminates the warranty as to the purchaser, rendering the warranty chimerical.  Sto may be able to demonstrate that *Keck* necessarily requires such a result.  It may, in the alternative, be able to demonstrate that the Alabama Supreme Court, if directly confronted with the issue, would reach that result.  On its present thin argument, however, it has done neither.[7]

### B. AEMLD/Negligence/Wantonness.

Sto invokes the "economic loss rule."  (Doc. 185 at 5-6).  "Under that rule, a cause of action does not arise under tort theories of negligence, wantonness, strict liability, or the AEMLD where a product malfunctions or is defective and

---

[7] Sto cites this Court's decision in *Gordon v. Acrocrete, Inc.*, 2006 WL 1096156 (S.D. Ala. 2006), as following *Keck* in a case where the plaintiffs, as here, were the general contractor and first owner.  *Id*. at *1.  In *Gordon*, however, the plaintiffs "agreed" that *Keck* controlled and required dismissal of their implied warranty claims.  *Id*. at *5; *accord Gordon v. Acrocrete, Inc.*, 400 F. Supp. 2d 1310, 1314 (S.D. Ala. 2005) (plaintiffs "conceded" that *Keck* required dismissal).  Given the plaintiffs' agreement and concession, this Court made no legal ruling that *Keck* actually extends to such a situation.

Sto also cites *Hanover Insurance Co. v. BASF Corp.*, 2019 WL 220240 (N.D. Ala. 2019).  *Hanover* applied *Keck*, but without addressing the issue raised by the plaintiffs here.  *Id*. at *5-6.  It is therefore no more conclusive than *Keck* itself.

thereby causes damage only to the product itself." *Ford Motor Co. v. Rice*, 726 So. 2d 626, 631 (Ala. 1998). The rule does not bar recovery when there has been damage to "other property." *Vesta Fire Insurance Corp. v. Milam & Co. Construction, Inc.*, 901 So. 2d 84, 107 (Ala. 2004).

       The seventh amended complaint alleges that the defective stucco allowed water intrusion resulting in "damage to exterior stone work, tiling, the roof system, exterior trim, exterior and interior paint, windows, doors, the substrate and other structural components of the house." (Doc. 174 at 6; *accord id.* at 11).[8] Sto denies that any of these items constitute "other property." It relies on an "integrated product doctrine" that it extracts from Florida – not Alabama – law. (Doc. 185 at 6 (citing *Premix-Marbelite Manufacturing Corp. v. SKW Chemicals, Inc.*, 145 F. Supp. 2d 1348 (S.D. Fla. 2001)). Sto has not shown that Alabama has adopted, or would adopt, an integrated product doctrine. Nor has it shown that any such doctrine would extend to damage caused by defective housing products to other elements of the house.

       To accomplish the first task, Sto relies on *Hanover Insurance Co. v. BASF Corp.*, 2019 WL 220240 (N.D. Ala. 2019). (Doc. 185 at 6). *Hanover*, however, acknowledged the absence of Alabama authority and instead simply invoked *Premix* without explaining why it believed Alabama would adopt the Florida doctrine. 145 F. Supp. 2d at 1359.

       To accomplish the second task, Sto relies on *Hanover* and on *Carrell v. Masonite Corp.*, 775 So. 2d 121, 125 (Ala. 2000). (Doc. 185 at 6). According to Sto, the *Carrell* Court "barr[ed] recovery in tort where defective siding caused harm to plaintiffs' home." (*Id.*). It is true that the *Carrell* Court employed the economic loss doctrine, 775 So. 2d at 124-25, but Sto identifies nothing in the opinion even hinting that the defective Masonite siding damaged anything other than the siding itself. The factual rendition states only that the "siding had been

---

       [8] Technically, these are allegations only of damage caused by Exterior's work, but Sto accepts them as allegations of damage from its product. (Doc. 185 at 7).

rotting and that it had to be replaced." 775 So. 2d at 123. The opinion's legal discussion states only that the plaintiffs "paid to have the siding replaced." *Id*. at 124. Justice Johnstone in his special concurrence wrote that he concurred in extending the economic loss doctrine "to a particular component of a home, like the siding in the case before us, which has failed so as to cause damage only to the component [*i.e.*, the siding] itself." *Id*. at 126.[9] Absent explanation, which Sto does not provide, the Court cannot conclude that *Carrell* involved damage to elements of the house beyond the siding itself.

In *Hanover*, a stucco wall system "allow[ed] water and moisture to leak into the building." 2019 WL 220240 at *1. The plaintiff alleged that sealants applied to the system failed to perform, and it argued that the sealants were the product and the stucco wall system other property. *Id*. at *6. The *Hanover* Court disagreed, ruling that the sealants were not a product separate from the stucco wall system but were an integral part of that system because, without the sealants, the wall system could not perform its function as a watertight envelope. *Id*.

Because it addressed and resolved an argument raised by the plaintiff, this portion of *Hanover* may be regarded as holding. The *Hanover* Court, however, then proceeded to address an issue that apparently was raised by neither party and which thus may constitute dicta[10]: "whether damage to the entire building constitutes damage to other property." 2019 WL 220240 at *6. In answer, the *Hanover* Court simply cited *Premix* (which did not involve buildings but only a chemical ingredient in a pool coating) and its integrated product doctrine and

---

[9] Justice Johnstone wrote specially to convey that he "would not agree" to any extension of the economic loss rule that would treat the house itself as the product (as would be the case if Sto's proposed rendition of an integrated product doctrine were adopted). By warning against future possibilities rather than dissenting from present realities, Justice Johnstone's concurrence underscores that *Carrell* did not involve damage to the house as opposed to the component siding.

[10] "[D]icta is defined as those portions of an opinion that are not necessary to deciding the case …." *Powell v. Thomas*, 643 F.3d 1300, 1304-05 (11th Cir. 2011) (internal quotes omitted).

11

announced without further analysis that "[t]he remedy for damage to a building caused by the failure of a building component is in breach of contract or warranty, not tort." *Id*. With respect, the Court cannot, based on the slender reed of *Hanover*, confidently predict that the Alabama Supreme Court would so extend the economic loss doctrine.

Finally, Sto notes that another sister court has distinguished *Hanover* on its facts rather than rejecting it as inconsistent with Alabama law. (Doc. 185 at 7). It is true that the Court in *Freeman v. NIBCO, Inc.*, 526 F. Supp. 3d 1112 (N.D. Ala. 2020), addressed *Hanover* only by explaining why it viewed specific allegations of damage to floors, walls and cabinets from leaky plumbing as different from vague allegations of damage from leaky walls for purposes of the economic loss rule, *id*. at 1124-25, but that approach was sufficient to support its denial of the defendants' motion for summary judgment and thus obviated consideration of whether the *Hanover* formulation is valid. The *Freeman* Court's silence on the issue is not equivalent to assent but, even if it were, it would not provide a sufficient showing of the content of Alabama law.

In its reply brief, Sto argues that *Keck*'s discussion of how EIFS, once installed, loses its status as a "good" for purposes of warranty claims supports or perhaps compels the conclusion that the stucco system at issue here cannot be a "product" separate from the house for purposes of tort claims. (Doc. 202 at 5). That conclusion is neither explained nor obvious, but in any event the argument – having been available when Sto filed its principal brief – comes too late.

In addition to economic damages, Counts VI, VII, and VIII seek recovery for "mental anguish and emotional distress." (Doc. 174 at 22, 24). "[T]he economic-loss rule does not prevent a tort action when the injury caused is personal …." *Public Building Authority v. St. Paul Fire and Marine Insurance Co.*, 80 So. 3d 171, 184 (Ala. 2010). The *Carrell* Court noted that the economic loss rule does not preclude recovery for mental anguish or any other physical injury. 775 So. 2d at 124-25. The plaintiffs conclude that their claims for relief

12

are immune to Sto's motion to dismiss to the extent they seek mental anguish damages.  (Doc. 196 at 7-8).

In its reply brief, Sto for the first time addresses the demand in Counts VI, VII, and VIII for mental anguish damages, and it is a barrage:  (1) the seventh amended complaint contains no factual allegation that Parker experienced mental anguish specifically due to Sto's conduct; (2) the seventh amended complaint does not allege either that Parker suffered physical injury or that he was placed in immediate risk of such harm by Sto's conduct; (3) the seventh amended complaint fails to allege that Parker owned the house or land at the relevant time; and (4) BMH cannot recover mental anguish damages because it is not a natural person.  (Doc. 202 at 6-7).  All of these arguments were available to Sto when it filed its principal brief, and Sto was then on notice both that Counts VI, VII, and VIII demanded recovery for mental anguish and that such damages are not subject to the economic loss rule.   Because Sto has once again offered no good reason for its failure to raise these arguments initially, they cannot support relief on motion to dismiss.

### C.  Fraud.

Counts IX and XII assert claims of fraudulent misrepresentation and suppression against Sto, WCS, and Dittenber.  Sto seeks dismissal of all fraud claims against it, while WCS and Dittenber challenge only Count XII.

#### 1.  Count IX.

Count IX alleges that Sto, by and through WCS and Dittenber, negligently represented there was nothing wrong with the product or the work and suppressed that the product and/or the work were defective. (Doc. 174 at 26).  Sto's only argument is that Count IX fails to satisfy Rule 9(b) because it does not allege what Sto stood to gain from the allegedly false representations by WCS and/or Dittenber. (Doc. 185 at 9-10).  Count IX, however, realleges and incorporates

paragraphs from the statement of factual background, including those paragraphs alleging that, in reliance on the representations of WCS and/or Dittenber, additional Sto materials were purchased. (Doc. 174 at 8, 9, 27). As the plaintiffs note, (Doc. 196 at 16-17), Sto plainly stood to gain by additional sales of its product.

In its reply brief, Sto makes no effort to rescue its sole articulated argument. Instead, Sto once again introduces a flood of new arguments never presented in its principal brief, including: (1) that Count IX fails to allege the satisfaction of a condition precedent to the promised issuance of a warranty; (2) that Count IX fails to allege that, at the time of the alleged fraud, Sto never intended to issue a warranty; (3) that Count IX fails to allege that, at the time of the alleged fraud, Sto had an intent to deceive the plaintiffs; and (4) that Count IX alleges no facts supporting the existence of a duty to disclose, as is necessary for the suppression claim. (Doc. 202 at 7-8). Because these arguments were available to Sto when it filed its principal brief, and because Sto offers no reason for having omitted them, they cannot support dismissal.

### 2. Count XII.

The seventh amended complaint alleges that the International Residential Code of 2012 ("the IRC") governed the work on the Parker home. A third-party non-profit ("ICC-ES"), in the business of examining building products and determining whether they satisfy the IRC, issued a report ("the Report") on the Sto system at issue, opining that it does satisfy the IRC, so long as the system is installed by applicators approved by Sto. Sto, however, has no process to certify, recognize, or approve applicators. Even though this absence of approved applicators means that the Sto system can never satisfy the IRC, Sto's website links to the report, as do its specs on the system. (Doc. 174 at 11-12). Count XII incorporates these allegations and continues that the defendants are "aware of the falsity of the information in" the Report. Sto knows it has no process to certify,

recognize, or approve applicators and yet "continues to promote this false report." Sto knows that building code officials, architects, homebuilders, general contractors, and applicators rely on the Report to conclude that the system meets code, and Sto had a duty not to falsely represent to them, or to ICC-ES and building owners, that its system complies with the IRC.  (*Id*. at 29-30).

Sto argues that Count XII does not allege:  (1) that the plaintiffs were aware of Sto's alleged misrepresentation to ICC-ES; (2) that the plaintiffs relied on Sto's alleged misrepresentation to ICC-ES; and (3) that the plaintiffs relied on the Report.  (Doc. 185 at 10).  The plaintiffs respond that they did not rely on the Report and that they do not even assert that the Report is fraudulent.[11]  Thus, they say, Sto's arguments are misdirected and ineffectual.  (Doc. 196 at 17).

Sto, however, makes a fourth argument:  that Count XII fails to allege "how they [the plaintiffs] were misled by Sto's 'promot[ion]'" of the Report.  (Doc. 185 at 10-12).  The court agrees.  The seventh amended complaint alleges only that Sto promoted the Report by linking it to its website and specs and thereby represented that the system meets the IRC.  Nothing in the pleading alleges that the plaintiffs were aware of this marketing and were misled by it.

In an apparent effort to avoid this conclusion, the plaintiffs assert that they relied "on the reasonable expectation that a product marketed for use in residential construction in fact meets building codes."  (Doc. 196 at 18).  Notably, the plaintiffs do not claim they were aware of Sto's marketing and relied on it in deciding to use Sto's product, much less point to any such allegation in the seventh amended complaint.  To the uncertain extent the plaintiffs intend to suggest they relied on the mere availability of the product for sale as carrying a

---

[11] This is a curious admission, given that Count XII describes the Report as a "false report" and alleges the defendants were "aware of the falsity of the information in" the Report.  (Doc. 174 at 29-30).  Nevertheless, the plaintiffs' statement in brief would seem to eliminate any such allegation from Count XII.

15

representation that the product satisfied the IRC, their pleading contains no such allegation.

Count XII also contains a suppression claim against Sto. (Doc. 174 at 30). Sto's principal brief, however, addresses only the misrepresentation claim. (Doc. 185 at 10-12). To the uncertain extent that Sto attempts to raise a Rule 9(b) challenge to the suppression claim in its reply brief, (Doc. 202 at 9), the effort comes too late.

Count XII also attempts to set forth misrepresentation and suppression claims against WCS and Dittenber. The totality of allegations against them reads as follows:

> 143. Dittenber and WCS are also aware of these facts, and are aware of the falsity of the information in the ICC-ES report.
> 144. Defendants Sto, Dittenber and WCS are guilty of innocent, or intentional misrepresentation and suppression, and have damaged Plaintiffs as outlined above.

(Doc. 174 at 30).

WCS and Dittenber argue that Count XII alleges no misrepresentation by them. (Doc. 186 at 3). The plaintiffs make no effort to identify one. (Doc. 196 at 17-18). The Court agrees that Count XII fails to allege this essential element of a misrepresentation claim.

As the parties agree, an essential element of a claim of fraudulent suppression is "a duty on the part of the defendant to disclose facts." *DGB, LLC v. Hinds*, 55 So. 3d 218, 231 (Ala. 2010). WCS and Dittenber deny that the seventh amended complaint alleges such a duty. (Doc. 186 at 4). The plaintiffs identify the duty at issue as one to disclose "the Sto Powerwall's failure to meet building codes," (Doc. 196 at 18), and they argue that their pleading includes factual allegations from which a duty to disclose may be inferred.

First, the plaintiffs assert that "the creation of a false impression contradicted by known facts creates a duty to not actively conceal those facts." They say that WCS and Dittenber "hold the Powerwall system out as appropriate

for construction," which "creates an impression that the Powerwall system meets code." Because their "hold[ing] out" created a false impression that the system satisfies the IRC, the plaintiffs conclude, WCS and Dittenber had a duty to disclose that it does not in fact meet code. (Doc. 196 at 18-19). As WCS and Dittenber note, (Doc. 201 at 4-5), however, the seventh amended complaint nowhere alleges that they "hold out" Sto's product as appropriate for construction, even though the pleading contains a staggering laundry list of their alleged misrepresentations and suppressions. (Doc. 174 at 13-14).

Second, the plaintiffs argue that "a specific request for information requires disclosure of all known facts," a duty they say was triggered when WCS and Dittenber were asked to inspect Exterior's work "with the specific request to ensure that the Sto Powerwall system" was "up to snuff." (Doc. 196 at 19). To trigger a duty to disclose, a question must specifically target the undisclosed information. For example, a lender had no duty to disclose the existence of termite damage absent a "specific request … for information about the possibility of termite damage." *Ex parte Farmers Exchange Bank*, 783 So. 2d 24, 29 (Ala. 2000). This standard requires "an inquiry … as to the specific deficiency in issue." *Swann v. Regions Bank*, 17 So. 3d 1180, 1190 (Ala. Civ. App. 2008) (explaining *Farmers*). Similarly, a car purchaser's question to the salesperson as to "why [his 15.49% interest rate] was so high" was only a "general inquiry" and "not specific enough" to impose a duty on the salesperson to disclose the existence of the dealership's agreement with the financing institution to receive 3% out of the 15.49%. *Ex parte Ford Motor Credit Co.*, 717 So. 2d 781, 783, 784, 786, 787 (Ala. 1997).

Asking whether the system was "up to snuff" (a question the seventh amended complaint does not allege was asked) is plainly too vague to support a duty to disclose under these authorities. The only question the seventh amended complaint actually alleges was put to WCS and Dittenber is "why the stucco was blistering on the CMU blocks." (Doc. 174 at 8). The plaintiffs do not rely on this

17

question, so it is irrelevant to the instant inquiry but, in any event, the question is likewise too general to impose a duty to disclose that the system does not satisfy the IRC because Exterior is not an approved applicator.

## CONCLUSION

For the reasons set forth above, Sto's motion to dismiss is **granted** with respect to the misrepresentation aspect of Count XII and is in all other respects **denied**. The motion to dismiss filed by WCS and Dittenber is **granted**. Count XII is **dismissed** in its entirety as to WCS and Dittenber and is **dismissed** with respect to misrepresentation as to Sto.

DONE and ORDERED this 24th day of January, 2023.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE
